UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ERICKSON CABRERA,

                       Plaintiff,

           -against-                    16 CV 1098 (GBD)

CITY OF NEW YORK, et al.,

                       Defendants.

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HARVIS & FETT LLP
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for plaintiff*

March 17, 2016

## TABLE OF CONTENTS

STATEMENT OF MATERIAL FACTS ....................................................... 1

THE SUMMARY JUDGMENT STANDARD ...................................................... 12

ARGUMENT ................................................................................. 13

    I.  DEFENDANT DENNIS FABRICATED EVIDENCE AS A
    MATTER OF LAW ...................................................................... 13

    II.  GIVEN THE DATABASE RESULTS, NO REASONABLE
    OFFICER COULD BELIEVE PROBABLE CAUSE EXISTED ................. 16

        A. False Arrest ...................................................................... 16

        B. Malicious Prosecution ..................................................... 19

CONCLUSION ............................................................................. 22

<u>STATEMENT OF MATERIAL FACTS</u>

Plaintiff Erickson Cabrera is a law-abiding resident of the Washington Heights neighborhood in Manhattan who has worked in the Creative Services Division of the City of New York's Transportation Department for the past several years. 50-h Testimony of Erickson Cabrera ("50-h Tran."), annexed to the Declaration of Gabriel P. Harvis dated August 10, 2016 ("Harvis Decl.") as Exhibit 1, p. 17, ln. 10-17; Business Card, annexed to Harvis Decl. as Exhibit 2. Before the events at issue in this case, Mr. Cabrera, then 33 years old, had never been arrested. BADS Arrest History Report ("BADS Report"), annexed to Harvis Decl. as Exhibit 3.

In August 2015, Mr. Cabrera purchased a 2007 BMW from his cousin's Virginia dealership, Lindsay Chevrolet (http://www.lindsaychevrolet.com/). 50-h Tran., Harvis Decl., Exhibit 1 at p. 15, ln. 13; p. 29, ln. 14; p. 30, ln. 1-7. Mr. Cabrera was issued a Virginia temporary license plate that expired on September 14, 2015. First Virginia Temporary Plate, annexed to Harvis Decl. as Exhibit 14 ("Temp. Plate I"). Prior to the expiration of Temp. Plate I and while the Virginia dealership was awaiting permanent plates from the New York State DMV, the dealership issued Mr. Cabrera a second set of temporary plates, in accordance with Virginia law. *See* Virginia Dealer Manual, annexed to Harvis Decl. as Exhibit 4, p. 54, Chapter

## STATEMENT OF MATERIAL FACTS

Plaintiff Erickson Cabrera is a law-abiding resident of the Washington Heights neighborhood in Manhattan who has worked in the Creative Services Division of the City of New York's Transportation Department for the past several years. 50-h Testimony of Erickson Cabrera ("50-h Tran."), annexed to the Declaration of Gabriel P. Harvis dated August 10, 2016 ("Harvis Decl.") as Exhibit 1, p. 17, ln. 10-17; Business Card, annexed to Harvis Decl. as Exhibit 2. Before the events at issue in this case, Mr. Cabrera, then 33 years old, had never been arrested. BADS Arrest History Report ("BADS Report"), annexed to Harvis Decl. as Exhibit 3.

In August 2015, Mr. Cabrera purchased a 2007 BMW from his cousin's Virginia dealership, Lindsay Chevrolet (http://www.lindsaychevrolet.com/). 50-h Tran., Harvis Decl., Exhibit 1 at p. 15, ln. 13; p. 29, ln. 14; p. 30, ln. 1-7. Mr. Cabrera was issued a Virginia temporary license plate that expired on September 14, 2015. First Virginia Temporary Plate, annexed to Harvis Decl. as Exhibit 14 ("Temp. Plate I"). Prior to the expiration of Temp. Plate I and while the Virginia dealership was awaiting permanent plates from the New York State DMV, the dealership issued Mr. Cabrera a second set of temporary plates, in accordance with Virginia law. *See* Virginia Dealer Manual, annexed to Harvis Decl. as Exhibit 4, p. 54, Chapter 7.1.1(f); 50-h Tran., Harvis Decl.,

Exhibit 1, p. 31, ln. 18–p. 32, ln. 3; Second Virginia Temporary Plate, annexed to Harvis Decl. as Exhibit 15 ("Temp. Plate II").

In the best of faith, Mr. Cabrera affixed both Temp. Plate I and Temp. Plate II to his BMW, so that it would be clear that the vehicle was in the process of being registered in New York State. 50-h Tran., Harvis Decl., Exhibit 1 at p. 33, ln. 16-17; p. 34, ln. 24-25; p. 35, ln. 1-2; *see* June 16, 2016 Oral Argument Transcript annexed to Harvis Decl. as Exhibit 5 ("Oral Arg. Tr."), p. 6, ln. 10-12 ("The Court: But [Mr. Cabrera] didn't have two sets of temporary plates. He had one that had expired and then he got an additional one. There is nothing illegal about that.").

On or about September 13, 2015, Mr. Cabrera's BMW was registered with the New York State Department of Motor Vehicles. New York State Registration, annexed to Harvis Decl. as Exhibit 6 (annotation by counsel). By September 16, 2015, permanent New York State license plates had been issued for Mr. Cabrera's BMW, and the Virginia Dealership was in receipt of them. *See* Postcard from Lindsay Chevrolet postmarked September 16, 2015 annexed to Harvis Decl. as Exhibit 7 ("Attention: Your Tags are in!!!"). Mr. Cabrera received the permanent license plates by FedEx on September 23, 2015. *See* Photographs annexed to Harvis Decl. as Exhibit 8.

On September 21, 2015 at approximately 5:36 p.m., defendants Brian Dennis[1] and Jose Caraballo observed plaintiff's car legally parked on Convent Avenue in Manhattan. Memo Book of Police Officer Dennis, annexed to Harvis Decl. as Exhibit 17. Conducting no investigation of any kind,[2] defendants observed Mr. Cabrera's address on one of the temporary license plates and proceeded directly to his apartment door. *See id.*; DA Datasheet, annexed to Harvis Decl. as Exhibit 21. Inside his home of 23 years, Mr. Cabrera was with his family, including his 14-year-old son, his wife, his mother, his stepfather and his uncle. 50-h Trans., Harvis Decl., Exhibit 1, p. 7, ln. 2-11. Each of them witnessed the events that followed.

---

[1] During the trial of the stop and frisk class action *Floyd v. City of New York*, defendant Dennis admitted under oath that he had stopped, frisked and taunted an innocent 13-year-old. *See* New York Daily News, March 27, 2013, *NYPD Cop Admits He Taunted Innocent 13-year-old Boy During Stop and Frisk,* annexed to Harvis Decl. as Exhibit 9; Trial Transcript in *Floyd v. City of New York*, annexed to Harvis Decl. as Exhibit 18, p. 1096, ln. 19-22 (Q: And you said to [the 13-year-old], "Stop crying like a little girl, right?" A: Yes, I did.").

[2] At his deposition, defendant Dennis testified that he conducted database checks in his police car before going to plaintiff's residence. Deposition Testimony of Brian Dennis, annexed to Harvis Decl. as Exhibit 19 ("Dennis Tr."), p. 86, ln. 9-19. However, any such checks were not memorialized in the officer's memo book (*see* Exhibit 17) nor in any police paperwork; documentation of such checks was never produced despite a Court order requiring production of that specific information (*see* Docket Entry No. 47, ¶ 1(f)) and, even if such checks had been conducted, Dennis nevertheless misrepresented the results to the ADA in his subsequent conversation. *Compare* Dennis Tr., Harvis Decl., Exhibit 19, p. 86, ln. 4-5 (in which Dennis testifies that he "ran the VIN" of plaintiff's BMW from his police car and it "came back with a New York registration") *with* the Declaration of ADA Andrew Roddin dated January 27, 2017, annexed to Harvis Decl. as Exhibit 20 ("Roddin Decl."), ¶ 5 (affirming that officer Dennis told the ADA that the VIN was "not on file anywhere."). Plaintiff respectfully submits that the officer's deposition testimony on this issue is thus both incredible and irrelevant.

The defendants knocked on the door and falsely stated that there was a warrant for Mr. Cabrera's arrest, refusing to show the alleged warrant and insisting that Mr. Cabrera come downstairs.[3] 50-h Trans., Harvis Decl., Exhibit 1, p. 16, ln. 6-18. Mr. Cabrera, knowing there could not be a warrant as he had never been arrested, agreed to go downstairs and clear the matter up. *Id.* When Mr. Cabrera went to put his shoes on inside the apartment, the defendant officers followed him inside and then escorted him downstairs without discussion. 50-h Trans., Harvis Decl., Exhibit 1, p. 16, ln. 6-18.

Downstairs, in full view of his neighbors, Mr. Cabrera was handcuffed, placed in a marked police van and driven to a police precinct. 50-h Trans., Harvis Decl., Exhibit 1, p. 20, ln. 15–p. 21, ln. 2. Mr. Cabrera's car was towed from the scene and impounded at his expense. Property Clerk's Invoice, annexed to Harvis Decl. as Exhibit 10; 50-h Trans., Harvis Decl., Exhibit 1, p. 39, ln. 7-9. At the precinct, Mr. Cabrera was held in a cell for approximately four hours, fingerprinted and photographed. 50-h Trans., Harvis Decl., Exhibit 1, p. 22, 4-7; p. 23, ln. 13-17.  Officer Dennis showed Mr. Cabrera a document appearing to show the plate number of the New York license plate

---

[3] The only evidence in the record concerning a warrant is a database print-out that is time-stamped as having been conducted over twenty minutes *after* plaintiff's arrest, and reflects a possible warrant for an individual with a different: (i) first name; (ii) middle initial; (iii) date of birth; (iv) social security number; (v) height (by four inches); and (vi) race. *See* Warrant Screenshot, annexed to Harvis Decl. as Exhibit 23. No reasonable officer could believe that this potential warrant related to plaintiff, especially given that a quick check of plaintiff's background in the NYPD system would reveal a clean record. *See* BADS Report, Harvis Decl., Exhibit 3. Plaintiff respectfully submits that under such circumstances the "warrant" has no bearing on the probable cause analysis.

plaintiff was expecting from Lindsay Chevrolet. Deposition testimony of Erickson Cabrera, annexed to Harvis Decl. as Exhibit 30, p. 52, ln. 1-p. 53, ln. 7 ("…[H]e told me that he found it weird because the original license plate came up in the report that he ran.").[4]

Within twenty minutes of plaintiff's arrival at the precinct, defendant Dennis ran a check of the relevant databases for the license plates on plaintiff's vehicle and its VIN numbers. The database checks showed that the plates and the vehicle were "active" and "valid." *See* "Active/valid" version of database results, Harvis Decl., Exhibit 24.

Although the officers testified to repeatedly questioning Mr. Cabrera, and statements obtained during that questioning were later presented to prosecutors as evidence against him, the officers never administered *Miranda* warnings to Mr. Cabrera or memorialized the statements in any paperwork. *See* Dennis Tr., Harvis Decl., Exhibit 19, p. 130, ln. 23-p. 134, ln. 19; Deposition testimony of defendant Lieutenant Jose Caraballo, annexed to Harvis Decl. as Exhibit 26 ("Caraballo Tr."), p. 144, ln. 9-p. 145, ln. 18; *see also* DA Datasheet, Harvis Decl., Exhibit 21 (reflecting two statements attributed to Mr. Cabrera that were never memorialized). It is unclear how defendant Dennis was able to retain knowledge of the specific verbiage from September 15 to November 12.

---

[4] Two days later, New York license plates matching the numbers on the print-out he had been shown arrived in a FedEx Envelope at Mr. Cabrera's apartment. *See* Photos, Harvis Decl., Exhibit 8.

Before Mr. Cabrera was released from the precinct, defendant Dennis issued him a desk appearance ticket reflecting an incorrect street address for Mr. Cabrera and a date of birth that was off by ten years. Desk Appearance Ticket, annexed to Harvis Decl. as Exhibit 25. At 11:40 p.m. that evening, Dennis damaged Mr. Cabrera's vehicle during an inventory search, but failed to note the damage as required on the property voucher. *See* Property Clerk Invoice, Harvis Decl., Exhibit 10 at p. 2; Damage Photo annexed to Harvis Decl. as Exhibit 11.

Surprisingly, given that the officers' purported basis for the arrest and prosecution of plaintiff was that he had forged and possessed fraudulent temporary license plates, and that plaintiff's lamination of one of the plates somehow amounted to a crime, the officers failed to even take custody of or voucher either plate. *See* Dennis Tr., Harvis Decl., Exhibit 19, p. 216, ln. 8-p. 217, ln. 24; Caraballo Tr., Harvis Decl., Exhibit 26, p. 208, ln. 14-p. 209, ln. 9.

As required, Mr. Cabrera took off work and spent one and a half hours at the 100 Centre Street courthouse on November 4, 2015, under the threat of the issuance of an arrest warrant. *See* DAT, Harvis Decl., Exhibit 25; 50-h Trans., Harvis Decl, Exhibit 1, p. 35, ln. 17-19, 24-25. Mr. Cabrera was told that the "report was not ready" and that the police officer had not shown up. *Id.*; Explanation of Desk Appearance Ticket Not Ready Case, annexed to Harvis Decl. as Exhibit 12; *see also* New York

County DA's Office Notes Regarding Scheduling Officer Dennis, annexed to Harvis Decl. as Exhibit 27.

Eight days later, with Mr. Cabrera's vehicle having been officially registered with the State of New York since September 13, 2015, and with the defendant officers having been aware of that fact since at least minutes after plaintiff's arrest, defendant Dennis signed and presented prosecutors with a sworn criminal complaint on November 12, 2015 in support of Mr. Cabrera's criminal prosecution on forgery charges. *See* Criminal Complaint dated November 12, 2015, annexed to Harvis Decl. as Exhibit 22 (accusing Mr. Cabrera of "utter[ing] and possess[ing] a forged instrument with knowledge that the instrument was forged and with intent to defraud, deceive and injure another").

In his conversation with ADA Andrew Roddin, Dennis falsely described the database results for plaintiff's vehicle – which, again, showed it lawfully registered (*see* Exhibit 24) – as "not being on file anywhere." *See* Exhibit 20 at ¶ 5. This false statement was incorporated into the sworn criminal complaint that Dennis signed under penalty of perjury. *See* Exhibit 22. Dennis then sent the DA's office incomplete and/or altered versions of the database results that purported to corroborate his false assertion. *See* "No Results" Version of Database Query Responses, annexed to the Harvis Decl. as Exhibit 16; Exhibit 20 at ¶¶ 5, 7.

Mr. Cabrera was next compelled to return to the courthouse on December 8, 2015, for arraignment on Dennis's charge that plaintiff's actions amounted to a knowing fraud. 50-h Trans., p. 35, ln. 16-17; p. 35, ln. 1-16. After taking off another day of work and spending another approximately three hours, Mr. Cabrera's assigned Legal Aid attorney presented the court with proof that the temporary plates were lawful. 50-h Trans., p. 36, ln. 1-16. The presiding judge recommended dismissal and the matter was adjourned to February 1, 2015. *Id.* On February 1st, after taking yet another day off of work, Mr. Cabrera appeared at court and prosecutors conceded that they were unable to prove the case, at which point the matter was dismissed and sealed. 50-h, p. 37, ln. 4-5; Certificate of Disposition, annexed to Harvis Decl. as Exhibit 13.

The instant action was commenced on February 12, 2016. From the outset, the case appeared to present clear factual disputes, given that plaintiff's car was legally registered at the time of his arrest, but defendants nevertheless aggressively sought dismissal pursuant to Rule 12. Defendants first filed a pre-motion application on May 27, 2016, before producing even a single page of discovery to plaintiff. *See* Docket Entry No. 15. The Court denied defendants' request. *See* Docket Entry No. 16. In advance of the initial conference, defendants produced query response screens purportedly reflecting negative results for law enforcement database searches conducted at the time

of plaintiff's arrest – using the relevant license plate numbers and VIN as search criteria. *See* "No Results" Version of Database Query Responses, Harvis Decl., Exhibit 16.

At the initial conference, argument was heard on defendants' contemplated motion. In the face of expressed skepticism from the Court regarding the likelihood of resolving plaintiff's claims without full discovery, defense counsel relied heavily on inferences drawn from Exhibit 16 to argue that "probable cause existed" because Officer Dennis "ran the plate numbers associated with [plaintiff's vehicle] and could not find any evidence that the vehicle was properly registered." Oral Arg. Tr., Harvis Decl., Exhibit 5, p. 2, ln. 15-p. 3, ln. 21. Defendants' position was consistent with defendant Dennis's statement in the criminal complaint he had sworn against plaintiff on November 12, 2015. *See* Criminal Complaint, Harvis Decl., Exhibit 22 ("I know that the temporary plates are forged…because I ran a computer check of the license plate numbers which revealed that the numbers were not on file anywhere."). The Court set a briefing schedule. Oral Arg. Tr., Harvis Decl., Exhibit 5 at p. 15, 10-17.

On July 22, 2016, defendants filed a summary judgment motion, arguing Dennis had probable cause to arrest plaintiff based upon the database query results, which they argued showed that Dennis had repeatedly entered the correct search criteria related to plaintiff's vehicle's license plates and VIN, but on each occasion "got no results." *See* Declaration of Paul H. Johnson dated July 22, 2016, annexed to Harvis Decl. as Exhibit

28, ¶¶ 6-7, 11-12; Defendants' 56.1 Statement dated July 22, 2016, annexed to Harvis Decl. as Exhibit 29, ¶¶ 20-21 ("At approximately 5:45 [p.m.] Officer Dennis ran [one of plaintiff's temporary license plate numbers] in the New York City Police Department's out of state registration by license plate and found no record of the license plate.").

Finding factual disputes in the record, the Court denied defendants' motion without prejudice and ordered the parties to proceed with discovery. *See* Docket Entry No. 42. The matter was referred to the Hon. James C. Francis IV for general pre-trial supervision by order dated October 21, 2016. *See* Docket Entry No. 45. At a conference held on November 16, 2016, the Court ruled on open discovery disputes and, *inter alia*, ordered defendants to produce "any login information for the license/registration checks performed in connection with the plaintiff's arrest" by December 15, 2016. Docket Entry No. 47, ¶ 1(f).

On December 15, 2016, defendants produced further documentation of the database queries conducted by Officer Dennis at the time of plaintiff's arrest. *See* "Active/Valid" Version of Database Results, Harvis Decl., Exhibit 24. Comparing the documents, which appear otherwise identical, as follows:

> ➢ Def25 (Exhibit 16) (reflecting no results for plate no. L14001) with Def275-76 (Exhibit 24) ("Plate Status: Active"); and

> ➢ Def27 (Exhibit 16) (reflecting no results for relevant VIN no.) with

Def277-81 (Exhibit 24) ("Status: Valid"),

it is evident that the documents were originally produced in a materially incomplete and misleading form, if not altered.

The new documents (Exhibit 24) reveal that the searches Dennis conducted, rather than turning up "no results" as defendants repeatedly claimed in pressing for summary dismissal, provided irrefutable proof that the car was validly registered and licensed. Considering the sworn statement contained in the criminal complaint (Exhibit 22), the documents produced in discovery by the defense (Exhibit 24) not only defeat defendants' theory of the case, but legally justify the granting of summary judgment to plaintiff on his fabricated evidence, false arrest and malicious prosecution claims.

When presented with the discrepancy, defense counsel stated that the documents had been produced to plaintiff as received and declined to elaborate, citing the attorney-client privilege. However, plaintiff respectfully submits that, given the effort plaintiff has expended to defend against arguments now disproven – arguments that defendants themselves had reason to know at the time of motion practice were without merit – and the wasted resources of the Court and plaintiff, defendants' conduct would support an award of costs. *See* Fed. R. Civ. P. 56(h) (authorizing an award of fees where summary judgment declaration is submitted in bad faith or for delay).

At depositions, the officer defendants were unable to offer any explanation

whatsoever for the apparent evidence fabrication with respect to the database results. *See* Dennis Tr., Harvis Decl., Exhibit 19, p. 171, ln. 4-p. 179, ln. 22 ("It is very strange, and this I cannot offer an explanation to because I don't have one."); p. 180, ln. 2-12 ("Based on [Exhibit 24, produced by defendants in civil discovery], I would never have charged [plaintiff with a crime]."); Caraballo Tr., Harvis Decl., Exhibit 26, p. 152, ln. 6-23.

<u>THE SUMMARY JUDGMENT STANDARD</u>

It is well settled that summary judgment under FED. R. CIV. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" within the meaning of FED. R. CIV. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

12

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). "[I]f 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

<u>ARGUMENT</u>

<u>POINT I</u>

<u>DEFENDANT    DENNIS    FABRICATED
EVIDENCE AS A MATTER OF LAW</u>

Under *Ricciuti v. New York City Transit Auth.* and its progeny, a "criminal defendant's right to a fair trial is violated when an investigating official creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Lopez v. City of New York*, 105 F. Supp. 3d 242, 246-47 (E.D.N.Y. 2015) (citing *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997)). A post-arraignment deprivation of liberty is not required to sustain a fair trial claim. *Id.;*

13

*see Dowling v. City of New York*, 11 CV 4954 (NGG), 2013 WL 5502867, *6 (E.D.N.Y. Sept. 30, 2013) ("…[N]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial [because no prosecution took place.]") (quoting *Keller v. Sobolewski,* 10 CV 5198 (FB), 2012 WL 4863228, *4 (E.D.N.Y. Oct. 12, 2012) (internal quotation marks omitted)).

In a recent decision denying summary judgment to defendants, the Hon. Colleen McMahon recently explained: "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Harris v. City of N.Y.*, ____ F.Supp.3d ____, 2016 WL 7188153, *7-8 (S.D.N.Y. 2016) (quoting *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir. 2000) (quotation marks omitted)). Indeed:

> While cases in this Circuit are inconsistent over whether [a fair trial] claim arises under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments, *see Morse v. Spitzer,* No. 07–cv–4793, 2013 WL 359326, at *3 (E.D.N.Y. Jan. 29, 2013) (citing cases), it is settled law that a plaintiff may bring a viable Section 1983 claim for damages based on fabrication of evidence where an officer's post-arrest fabrication of evidence results in a restraint on the plaintiff's liberty, *Zahrey,* 221 F.3d at 350.

> The Second Circuit reached the same result "when the fabricated information at issue is the officer's own account of his or her observations of alleged criminal activity which he or she conveys to prosecutors." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 268 (2016).

*Harris*, 2016 WL 7188153 at *7.

Much more so than *Harris* (which also involved a plaintiff issued a Desk Appearance Ticket), this case presents a deeply challenging record for defendants on the issue of fabricated evidence. The undisputed facts establish that Officer Dennis knew at the very latest within minutes of taking plaintiff into custody that Mr. Cabrera's license plates and vehicle were validly registered with active status. Those documents, produced by defendants in response to a Court order, contain a unique time stamp and serial number, along with the querying officer's Tax ID number. "Active/Valid" Version of Database Query Results, Harvis Decl., Exhibit 24.

The version of the documents presented to the DA, consistent with Dennis's false statements, have the same unique identifiers as the accurate documents, but appear to have been altered to reflect no results. "No Results" Version of Database Query Responses, Harvis Decl. Exhibit 16. Officer Dennis, for his part, could offer no explanation whatsoever for the apparent alteration, leaving plaintiff's well-grounded allegations unrebutted. *See* Dennis Tr., Harvis Decl., Exhibit 19, p. 171, ln. 4-p. 179, ln. 22; p. 180, ln. 2-12.

15

Accordingly, since the record clearly shows that Officer Dennis forwarded false evidence to the DA that required plaintiff to attend Court proceedings under the threat of the issuance of an arrest warrant and of arrest, he is liable to plaintiff on plaintiff's fabrication of evidence claim. *See Harris*, 2016 WL 7188153 at *7.

<u>POINT II</u>

<u>GIVEN THE DATABASE RESULTS, NO REASONABLE OFFICER COULD HAVE BELIEVED PROBABLE CAUSE EXISTED</u>

The "Active/Valid" Version of the database results, which defendants themselves produced, prove definitively that plaintiff's vehicle was duly registered and licensed at the time of his arrest and that defendants themselves were aware of it. *See* Dennis Tr., Harvis Decl., Exhibit 19, p. 171, ln. 4-p. 179, ln. 22; p. 180, ln. 2-12; Caraballo Tr., Harvis Decl., Exhibit 26, p. 152, ln. 6-23; "Active/Valid" Version of Database Results, Harvis Decl., Exhibit 24. Under such circumstances, arguable probable cause to charge or prosecute plaintiff with an intentional forgery (or any other crime or offense) was lacking as a matter of law.

A.    False Arrest

In the Second Circuit, the warrantless arrest of an individual is presumptively unlawful. *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003). "[D]efendant has the burden to establish that he had probable cause." *Vasquez v. McPherson*, 285 F. Supp. 2d 334, 340-41 (S.D.N.Y. 2003) (citing *Raysor v. Port Auth. of New York & New*

16

*Jersey,* 768 F.2d 34, 40 (2d Cir. 1985) and *Wu v. City of New York,* 934 F.Supp. 581, 586 (1996)); *see Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 532 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011) ("It is axiomatic that the police cannot arrest a person unless they have probable cause to believe that he has committed a crime.") (citing *Gerstein v. Pugh,* 420 U.S. 103, 111–112 (1975)). "To meet his burden, defendant must show, by admissible evidence, that he had a quantum of evidence more than rumor, suspicion, or even a strong reason to suspect." *Id.* (quotation marks and citations omitted).

In the *Vasquez* case, the Hon. Colleen McMahon explained that "arrests cannot be based on mere suspicion" and, as a result, "the facts relied upon by an arresting officer must not be susceptible of an innocent or ambiguous explanation." *Id.* (citations omitted). This Court came to a conclusion in accord with these principles in *Moakely v. P.O. Jane Velarde:*

> An arrest is not valid if it is executed to afford the agents an opportunity to amass facts sufficient to constitute probable cause. *United States v. Martinez*, 465 F.2d 79, 82 (2d Cir. 1972) (citations omitted). While "good hunches are the foundation of good police work," they do not provide sufficient grounds to arrest. *United States v. Chadwick*, 532 F.2d 773, 785 (1st Cir. 1976), *aff'd on other grounds*, 433 U.S. 1, 97 S.Ct. 2476, 53, L.Ed.2d 889 (1968). Even if the circumstances led the officers to suspect wrongdoing, that suspicion alone does not constitute probable cause. *Id.*

99-CV-8959 (GBD), 2002 WL 287848, at *3 (S.D.N.Y. Feb. 27, 2002).

17

Whether probable cause or reasonable suspicion exists is an objective inquiry that considers only the facts available to the officers at the time of arrest. *Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (citing *Whren v. United States,* 517 U.S. 806, 813 (1996)); *Moakely*, 2002 WL 287848 at *3 (citing *Ricciuti v. New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997)). "[T]he existence of probable cause is to be determined on the basis of the totality of the circumstances…through an inquiry into whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause or arguable probable cause to arrest." *Hargroves v. City of New York*, 411 F. App'x. 378, 383 (2d Cir. 2011) (citing *Kent v. Katz*, 312 F.3d 568, 576 (2d Cir. 2002) and *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)); *see Vasquez*, 285 F. Supp. 2d at 340 ("Courts evaluating probable cause must consider those facts available to the officer at the time of the arrest and immediately before it.") (citing *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996)).

Here, Mr. Cabrera had both facially valid (and actually valid) temporary plates on his vehicle at the time the officers observed it and permanent plates duly issued by the State of New York making their way to him in the mail. His vehicle was properly registered and legally parked.

Considering plaintiff's Exhibit 24 – which defendants cannot explain – the only reasonable conclusion to be drawn from this record is that the officers knew, but disregarded, plaintiff's innocence, restraining his liberty nevertheless. Such conduct constitutes the tort of false arrest and entitles plaintiff to summary judgment.

B.     Malicious Prosecution

The elements of malicious prosecution require the plaintiff establish "1) that Defendants either commenced or continued a criminal proceeding against him, 2) that the proceeding terminated *in his favor,* 3) that there was no probable cause for the criminal proceeding, and 4) that the criminal proceeding was instituted with actual malice." *Barnes v. City of N.Y.*, No. 13 CIV. 7283 GBD JLC, 2015 WL 5052508, at *6 (S.D.N.Y. Aug. 26, 2015) (*Bermudez v. City of New York,* 790 F.3d 368, 376–77 (2d Cir. 2015) (emphasis added)).

First, it is black-letter law that by making or participating in an arrest, a police officer "initiates" a prosecution. *See, e.g., Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("As a matter of law, [police officers] filing of the Criminal Court Complaint "initiated" the prosecution against Cameron.") (citing *Ricciuti,* 124 F.3d at 130); *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994) (defendants initiated criminal proceeding by formally charging plaintiff); *Ramos v. City of New York*, No. 05 Civ. 3155, 2006 WL 2871969, at *4 (S.D.N.Y. Oct. 5, 2006) ("In this case, Officers Benitez

19

and Stanley did not procure a warrant, but their involvement was functionally equivalent or greater, because they actually arrested plaintiff, without a warrant, on their own authority. This is enough to constitute 'initiation' for purposes of a malicious prosecution claim."); *Phelps v. City of New York*, No. 04 CIV. 8570, 2006 WL 1749528, at *4 (S.D.N.Y. June 27, 2006) (officers who were responsible for arrest initiated prosecution, even though neither was the official "arresting officer"); *Taylor v. City of New York*, No. 03 CV 6477, 2006 WL 1699606, at *4 (S.D.N.Y. June 21, 2006) (arresting officers "clearly" initiated prosecution); *Carter v. Port Auth. of N.Y. & N.J.*, No. 03 Civ. 8751, 2004 WL 2978282, at *8 (S.D.N.Y. Dec. 20, 2004) (officers initiated prosecution by swearing out complaining and corroborating affidavits and being available as witnesses to continue case); *Cox v. County of Suffolk,* 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (officer initiated prosecution by swearing to felony complaint).

Second, plaintiff's prosecution was favorable terminated as a matter of law. *See* Certificate of Disiposition, Harvis Decl., Exhibit 13 ("Dismissed and sealed C.P.L. 160.50…People unable to prove."); *see also*, *e.g.*, *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) ("As a general rule, a final termination of a criminal proceeding in favor of the accused is a favorable termination for the purposes of a subsequent malicious prosecution claim.").

20

Third, no reasonable police officer could find probable cause where, as here, a properly registered vehicle, with valid temporary license plates issued by the Commonwealth of Virginia was parked legally on the street. Notably, in the malicious prosecution context, defendants must have probable cause for the specific crime charged, and cannot rely on alternative *Devenpeck* grounds. Here, that means that defendants must establish probable cause – notwithstanding Plaintiff's Exhibit 24 – to have charged Mr. Cabrera with a knowing and willful forgery. *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("Defendants [in a malicious prosecution case] must have had probable cause for each charge for which Plaintiff was prosecuted.").

Fourth, and lastly, "[i]n most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Klein v. Zugabie*, 15-CV-9093 (NSR), 2017 WL 374733, *9 (S.D.N.Y. Jan. 24, 2017) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)) (quotation marks and citation omitted). Here, plaintiff has sufficiently established lack of probable cause for the charged crime and the inference of malice is allowed as a matter of law. *See Ramos v. City of New York*, 729 N.Y.S.2d 678, 691 (App. Div. 1st Dept. 2001) ("Regarding the element of malice, a plaintiff need not demonstrate the defendant's intent to do him or

her personal harm, but need only show a reckless or grossly negligent disregard for his or her rights.").

Accordingly, plaintiff respectfully requests summary judgment on his malicious prosecution claim.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that the Court grant partial summary judgment to plaintiff on his claims of false arrest, malicious prosecution and evidence fabrication, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
        March 17, 2017

HARVIS & FETT LLP

_____
Gabriel P. Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*