H5BFCABC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ERICKSON CABRERA,

4                    Plaintiff,

5             v.                            16 CV 1098 (GBD)

6   THE CITY OF NEW YORK,

7                    Defendant.

8   ------------------------------x
                                        New York, N.Y.
9                                       May 11, 2017
                                        11:02 a.m.
10
    Before:
11
                       HON. GEORGE B. DANIELS,
12
                                        District Judge
13
                            APPEARANCES
14
    HARVIS & FETT LLP
15        Attorneys for Plaintiffs
    GABRIEL HARVIS, ESQ.
16
    ZACHARY CARTER, Corporation Counsel
17  for the City of New York
          Attorney for Defendant
18  PAUL HASAN JOHNSON, ESQ.

19

20

21

22

23

24

25

H5BFCABC

1              (Case called)

2              (In open court)

3              THE DEPUTY CLERK:  16 CV 1098.  Cabrera v. City of New

4    York, et al.  Counsel, state your appearances, starting with

5    plaintiff.

6              MR. HARVIS:  Gabriel Harvis of Harvis & Fett for

7    plaintiff.

8              MS. FETT:  Good morning, your Honor.  Baree Fett for

9    plaintiff, Mr. Cabrera.

10             MR. JOHNSON:  Paul Johnson for New York City and

11   Police Officers Brian Dennis and Sergeant Caraballo.

12             THE COURT:  Good morning.  You know what, I'd like to

13   first hear from the plaintiff, because I want to sort of narrow

14   the issues here.  First of all, let me -- I wasn't quite sure

15   what the parties' positions were with regard to the claim

16   against the City.  What's at this point, do you have a claim

17   against the City?

18             MR. HARVIS:  We have claims against the City that are

19   derivative under respondeat superior for the state law claims.

20   We don't have a direct constitutional claim against the City.

21             THE COURT:  I wasn't sure whether there was a

22   respondeat superior claim under these circumstances.

23             MR. HARVIS:  Sure, your Honor.  The officers were

24   acting as employees of the City of New York when they committed

25   these acts, so under state law the City is responsible for

1    their conduct.  We filed a timely notice of claim and the

2    claims appear in our pleadings.

3              THE COURT:  And which claim is that?

4              MR. HARVIS:  That would be false imprisonment under

5    state law.

6              THE COURT:  I'm just trying to figure out from looking

7    at your complaint if you've alleged such a claim against the

8    City.

9              MR. HARVIS:  Absolutely, yes.  If you look at claim

10   number 3, if you look at paragraph number 42.

11             THE COURT:  Claim number 3?

12             MR. HARVIS:  This is on page 7.  And it's also

13   paragraph 50, your Honor, as to the assault and battery claim

14   under state law.

15             THE COURT:  Okay.  So you are not pursuing claim 7?

16             MR. HARVIS:  No.  I apologize, your Honor.  That was

17   an oversight.  We are.

18             THE COURT:  Okay, but that's a Monell claim and you

19   don't have any facts here that you put before me that there is

20   such a claim, if there's any facts for such a claim.

21             MR. HARVIS:  Actually, it's my fault it was presented

22   that way.  It's a negligence claim under state law for

23   negligently hiring the officers.  It's not a claim that it was

24   pursuant to an unlawful policy or custom.

25             THE COURT:  There's no such claim.  It can't be.  I

H5BFCABC

1    mean, well, I shouldn't say there's no such claim, but there's

2    no such facts.  I mean, there are no facts that you are relying

3    upon that indicate that when they were hired there was somebody

4    who shouldn't have been hired, that they had any information to

5    indicate that somebody shouldn't have been hired.  I thought

6    you were trying to assert a claim of negligent training, but, I

7    mean, you don't claim there was anything in their backgrounds

8    or anything that the City was aware of when they were hired as

9    police officers that would have given them cause to not hire

10   them as police officers?

11           MR. HARVIS:  As to the hiring claim, I agree with your

12   Honor and I'm prepared to withdraw that.  As to the training

13   claim, I think it's a little bit less clear.  They're certainly

14   going to be arguing that the actions they took were based on

15   the training they had.

16           THE COURT:  Wouldn't the training claim have to be a

17   Monell claim?

18           MR. HARVIS:  No.  I mean, it does if you're alleging

19   it as a pattern of practice, but as long as there was

20   negligence in the training of these individual officers and we

21   file a timely notice of claim we can pursue that claim assuming

22   it's supported by the evidence.

23           THE COURT:  I don't know, you haven't pointed to any

24   evidence that indicated that there's some training that they

25   did or didn't get that you say was negligent.

H5BFCABC

1          MR. HARVIS:  Yeah, I mean, I wish I had the

2     opportunity to -- I should have devoted more of the briefing to

3     that.  The argument is basically they're going to say they did

4     as they were trained.

5          THE COURT:  I'm not sure they're going to say that.

6     They're going to say they did what they felt was reasonable.

7     I'm not sure anybody asserted that the actions that they took

8     was some direction they were given by the Police Department.  I

9     mean, I just, there's no discussion either way from either side

10    with regard to that somehow that they were taught the wrong

11    thing or they weren't taught the right thing.

12         MR. HARVIS:  All right.  I mean, yeah, I agree.  It's

13    not, there isn't a ton of support for it in the record and I'm

14    not trying to argue the point.

15         THE COURT:  And you all -- they also challenge your

16    failure to intervene.  You could have alternative theories but

17    you can't have alternative facts.  Where do you claim you're

18    going to prove that happened?  I assume on the facts that

19    you've given me that both police officers were equally

20    responsible for making this arrest?

21         MR. HARVIS:  Yes, I believe that is our allegation.  I

22    just believe there's a universe of facts that the jury could

23    come to in which Officer Dennis was the one who was making the

24    actual fabrications and directly causing a constitutional

25    violation, but the sergeant was aware of it and took no action

H5BFCABC

1    to stop it.

2              THE COURT:  Took no action to stop it?  That led to

3    the arrest or the prosecution or?  That's why I wasn't clear.

4              MR. HARVIS:  They sort of both take the -- they both

5    take credit for making the decision to arrest.

6              THE COURT:  So they're both primarily principally

7    responsible independently through jointly making this arrest.

8              MR. HARVIS:  Correct.

9              THE COURT:  And I think they both physically

10   participated in the arrest.  I don't know who put on the cuffs

11   or who said "you're under arrest," but they obviously jointly

12   arrested.

13             MR. HARVIS:  That's our position.  It really comes a

14   little bit later in the process because the evidence shows that

15   at approximately 6:14, if not earlier, there was a database

16   query that's done by Officer Dennis.  It has his tax ID on it.

17   So at that point the trail leads a little bit more directly

18   from Dennis than it does through Caraballo, because Dennis is

19   doing the database queries and later talking to the DA giving

20   them the false evidence and swearing out the criminal

21   complaint.

22             THE COURT:  So what is it that you say the other

23   officer at that point should have done related to what claim?

24             MR. HARVIS:  So as the superior officer, Caraballo

25   testified in his deposition that he was aware of all of the

1    process that I just described.  So since he --

2                THE COURT:  Aware of which process?

3                MR. HARVIS:  That the database had been queried, there

4    were documents forwarded to the District Attorney's office and

5    statements made to the DA's office that ruled in the criminal

6    complaint.

7                THE COURT:  Are there any statements where he said he

8    was aware of what's in that database?

9                MR. HARVIS:  Well, yes, there is evidence in the

10   record of his deposition that Dennis came back and showed him

11   the results of these searches, and so that goes to both the

12   manufacture of evidence and malicious prosecution claim.

13               THE COURT:  And the results were what?  The evidence

14   of what that was was unclear to me.  I looked at Exhibit 24.

15   It was just unclear to me how laid out exactly what you say was

16   the obvious --

17               MR. HARVIS:  Let me explain that to your Honor.  The

18   two exhibits germane to this issue are Exhibit 16 and Exhibit

19   24.

20               THE COURT:  16 is which one?

21               MR. HARVIS:  16 is one version of the database query.

22   What happened was when we first started this case, when we

23   first filed the case, in the initial disclosure we were given

24   the documents at Exhibit 16, that's one version of the database

25   query.

1          THE COURT:  I have 24 in front of me, but I don't have

2    16.  How is 16 different from 24?

3          MR. HARVIS:  I have a copy for your Honor.  I'll tell

4    your Honor it's very straightforward.  If you look at 16,

5    you'll see the first page, DEF 25, lists no record.  The only

6    thing that's on there, that says any result is no record.  It

7    says it three times.

8          THE COURT:  Okay.

9          MR. HARVIS:  Then, if you compare that over to Exhibit

10   24 and it's a little out of order in terms of, these are the

11   same results.  But in Exhibit 24's version of the results at

12   the bottom it actually shows Mr. Cabrera's information whereas

13   in Exhibit 16 at the bottom it just says no results.

14         THE COURT:  That's not exactly what it says at the

15   bottom.  Are you talking at the bottom of page 1?

16         MR. HARVIS:  If you look at the Bates number it says

17   DEF 0025?  Exactly, it doesn't literally say no results at the

18   bottom, but there's nothing showing Mr. Cabrera as related to

19   these results on that page.

20         THE COURT:  But these are two different runs.

21         MR. HARVIS:  Let me show you that.

22         THE COURT:  Because they're at different times.

23         MR. HARVIS:  They're not, actually, your Honor.  Only

24   because, as I said, these two exhibits show the results out of

25   sequence.  So let me show you which ones actually compare.  I'm

H5BFCABC

1    sorry.

2         THE COURT:  That's why I was confused.

3         MR. HARVIS:  I apologize.  This is the way the

4    documents were produced to us.  Let me show you the exact

5    documents to compare.  If you look at the one marked DEF 25 on

6    Exhibit 25 and you look at the ones marked DEF 275 to 276,

7    those are the two that line up.

8         THE COURT:  I'm sorry, you said 275 --

9         MR. HARVIS:  Exactly.  To 276.

10        THE COURT:  To 276 is what, page 25?

11        MR. HARVIS:  Yes.  Exactly.  Correct, your Honor.

12        THE COURT:  But I have more columns.  So --

13        MR. HARVIS:  That's right.  So the important part to

14   look at here is that the time is the same, the serial number is

15   the same and the tax ID is the same between the two documents.

16        THE COURT:  So the first block is the same on each

17   page.  The second block is the same on each page.  The third

18   block is the same on each page.  The fourth block is different.

19        MR. HARVIS:  Correct.  And, incidentally, on Exhibit

20   24 there's a second page to the results as well.

21        THE COURT:  Oh, I see.  But the fifth block on 75 is

22   the fourth block on 25?

23        MR. HARVIS:  Correct.

24        THE COURT:  So what you're saying is missing from 25

25   is the fourth block on 75, which indicates Mr. Cabrera.

H5BFCABC

1          MR. HARVIS:  That's correct, your Honor.

2          THE COURT:  As being the registered owner of the

3    vehicle?

4          MR. HARVIS:  That's correct.  Exactly right, your

5    Honor.  And it's the same when you compare DEF 27 to DEF 277

6    through 81.

7          THE COURT:  I'm sorry, say that again?

8          MR. HARVIS:  When you compare DEF 27 from Exhibit 16

9    with DEF 277 through 81 of Exhibit 24.

10         THE COURT:  That can't be true.

11         MR. HARVIS:  Why?

12         THE COURT:  277 to 81 is more pages.

13         MR. HARVIS:  It's just about the missing blocks, your

14   Honor.  So because it has the same serial number, the same time

15   and the same tax ID.  So, again, it's a matter of blocks being

16   removed.  So instead of there being the additional pages that

17   would constitute pages 278, 279, 280 and 281, it's just

18   presented as a first single page.

19         THE COURT:  So, okay.  But 277 corresponds to page 27.

20         MR. HARVIS:  Correct.

21         THE COURT:  All right.  So what is the next page after

22   27?

23         MR. HARVIS:  Well, the reason why I want to focus on

24   those two, because those are the two that shows that

25   Mr. Cabrera, the active and valid licenses of Mr. Cabrera.  The

1    other page relates to the expired plate.  I could show your

2    Honor, but I just don't think it's relevant because it's an

3    expired plate.

4              THE COURT:  I just want to figure out why I'm

5    comparing the two.  Is anything after 27 relevant?

6              MR. HARVIS:  Well, no.  The only thing that comes

7    after 27 you'll see the Bates stamps on the bottom of the page

8    after that, those are the Bates stamps that were produced by

9    the district attorneys of New York County as the search was

10   provided to them, so it's another copy as produced by the DA's

11   office.

12             THE COURT:  So these pages correspond to something on

13   Exhibit 24?

14             MR. HARVIS:  It's a duplicate.  First three pages of

15   16 is the last three pages of 16.  The only difference is the

16   first three pages were given to us by the defendants in this

17   case and the second three were given to us by the DA's office

18   in response to our subpoena.

19             THE COURT:  The second pages of which document?

20             MR. HARVIS:  16.  16 is six pages.  The first three

21   are from the City and an identical copy was produced from the

22   DA's office as having been provided to them by Dennis.

23             THE COURT:  I'm still confused.  Can I walk you

24   through?  I see 77 on Exhibit 24 corresponds to 27 on Exhibit

25   16.

H5BFCABC

1        MR. HARVIS:  That's correct.  Except, and then but

2   what it shows you is that what is 277 on Exhibit 24 is actually

3   a four-page document, but when it was provided to the DA's

4   office it was only provided as a one-page document that would

5   give the impression that there were no responsive results to

6   the query.  Whereas, if you go on with the three pages of 24,

7   you'll see how it's all about Erickson Cabrera and how the

8   plates are valid and it's registered to him.

9        THE COURT:  Exhibit 24 came from where?

10       MR. HARVIS:  Exhibit 24 was produced in response to

11  Judge Francis' order during the course of discovery in this

12  case by the City.

13       THE COURT:  Okay.  And so Exhibit 24 was represented

14  to be what?

15       MR. HARVIS:  It wasn't represented to be anything.  We

16  got a Bates stamped page of production from the City that said

17  this is in response to Judge Francis' order.

18       THE COURT:  What request were they responding to?

19       MR. HARVIS:  The order said that the City should

20  produce -- one second -- quote, "any log-in information for the

21  license/registration checks performed in connection with the

22  plaintiff's arrest."

23       THE COURT:  Okay.  So where did -- what is the

24  evidence or the testimony with regard to this document?

25       MR. HARVIS:  Sure.  So, well, first, I just want to

1   note, the City made an initial summary judgment motion relying

2   on what we see in Exhibit 16 to make the argument that there

3   were no responsive results in the query.

4            THE COURT:  I understand.

5            MR. HARVIS:  Then we get to Exhibit 24 and we have the

6   deposition of the officers and they provided no explanation

7   whatsoever.

8            THE COURT:  Did the officers identify this document?

9            MR. HARVIS:  They didn't -- yes, they did.  I mean, it

10  was confusing because they didn't know what they were looking

11  at.  They said, "What is this?  I don't know what this is.  I

12  can't explain it."

13           THE COURT:  That's what I'm asking.  They didn't say

14  that this was the radio run that they received?

15           MR. HARVIS:  The database query that they ran, well,

16  they can't dispute it because it's their own tax ID that's on

17  the document.

18           THE COURT:  I'm just asking you what the testimony

19  was.  Did you ask them what this document was and did they

20  identify the document as the document that they ran received?

21           MR. HARVIS:  Yes, they did, your Honor.  And they also

22  said, they were confused because they said, well, if I had had

23  this document at the time I never would have charged

24  Mr. Cabrera.  That's what the officer said and yet we have a

25  time stamp that shows that they had it on the date that he was

H5BFCABC

1    arrested.

2         THE COURT:  Okay, so what was -- again, I'm just

3    trying to get the facts straight.  What was their testimony at

4    the deposition as to what they had in hand at the time that

5    they arrested Mr. Cabrera?

6         MR. HARVIS:  Well, they first said, when I first

7    showed them this document they identified that this was a

8    document they had.  Then I asked them to look at it and to say,

9    well, you told the DA that there were no results right so how

10   is that possible there are results here?  They say, "I don't

11   know.  I wouldn't have done that.  I don't know the answer."

12   That was basically their response.

13        THE COURT:  But they did not, the information that

14   comes up with regard to Mr. Cabrera's ownership of the vehicle

15   and registration of the vehicle, they did not at the deposition

16   say that they had that on the run at the time they ran it?

17        MR. HARVIS:  Well, it's a little bit confusing, your

18   Honor, because what they say, what they began saying at the

19   deposition was they in fact conducted an additional check of

20   the vehicle at the time they saw it on the street from their

21   car, which is separate from the documents that we have, and

22   even though there was an order from Judge Francis for it to be

23   produced, we never received any documentation of that check.

24   The reason that's relevant, these are all just databases,

25   because if they actually queried the database as they said they

H5BFCABC

1    did when they saw the car on the street, the results they would

2    have gotten back would have been the results in Exhibit 24

3    because those were the results at that time of that day.

4              THE COURT:  Right.  So this document indicates on 77

5    that on September 21 at 6:14:42 they sent a request.

6              MR. HARVIS:  Correct, your Honor.

7              THE COURT:  And three seconds later they got a

8    response.

9              MR. HARVIS:  Exactly.

10             THE COURT:  And your contention is that this is the

11   complete response that they received?

12             MR. HARVIS:  That's what was provided in response to

13   the Court's order by the defendants, the City of New York, as

14   the response they received.

15             THE COURT:  I know, but I'm trying to figure out what

16   you're going to prove at trial.  You're going to proffer this

17   as the request that was made by the police officers and the

18   response that they necessarily would have received and that

19   response would have included information identifying

20   Mr. Cabrera as the registered owner of that vehicle.

21             MR. HARVIS:  That is correct, your Honor.

22             THE COURT:  All right.  And what is the evidence going

23   to demonstrate at trial with regard to Bates stamp number 27?

24   Exhibit 16?

25             MR. HARVIS:  Well, we hope that there is no trial

H5BFCABC

1    because we're arguing for summary judgment, but we would hope

2    that, we would argue that the jury should draw the inference

3    that someone -- the only person who's testified to be involved

4    in this process is Officer Dennis -- either knowingly forwarded

5    information that was incomplete or actually altered the

6    document or its presentation so the district attorney would

7    have the impression that the data was not on file.  And it's

8    even more consequential than that, because we have an affidavit

9    from the DA in which he testifies that Dennis actually told him

10   that the records were not on file and that's also contained in

11   the sworn criminal complaint that Dennis filed under penalty of

12   perjury.

13            THE COURT:  And what makes you say that officer,

14   what's the name of the other officer?

15            MR. HARVIS:  Caraballo.

16            THE COURT:  What makes you say there's some evidence

17   he participated in?

18            MR. HARVIS:  We cite the specific testimony in our

19   papers, your Honor, but he basically testified that he was

20   there for all the material parts of the process.  He was there

21   not only when the arrest and the decision to arrest was made,

22   he authorized the arrest and he had continuing conversations

23   with Dennis about the fact he had run the results, that Dennis

24   had gone to the DA's office, they were both surprised the DA

25   decided not to prosecute the case.

H5BFCABC

1          THE COURT:  I know, but everything you just said still

2     doesn't give me a basis to say that he somehow should have

3     intervened.  What information did he have that you say should

4     have prompted him to intervene?

5          MR. HARVIS:  Oh, sure.  Well, there is no credible

6     argument to be made that there was probable cause for the

7     charged offense here, which was criminal possession of a forged

8     instrument.  Because assuming that that is a finding that is

9     made and there is no such credible evidence, then no reasonable

10    officer would have allowed that charge to have been provided to

11    the, commenced by the prosecutors and because Caraballo

12    understood that that was a charge that was being brought and

13    did not intercede and say, wait a minute, we don't have any

14    evidence to support that charge --

15         THE COURT:  Well, that's only true if he knew that

16    the -- he knew what was on this radio run.

17         MR. HARVIS:  No, I disagree, your Honor.  This radio

18    run aside, this database aside, there is no actual evidence of

19    a forged instrument in this case.  And so independent of this,

20    he --

21         THE COURT:  If the officer says that I saw the

22    document, the document says that this car was registered, I ran

23    a database and this car did not come up registered, why

24    wouldn't that be a reasonable basis for the officer to conclude

25    that the temporary license plate was not a valid temporary

H5BFCABC

1    license plate?

2          MR. HARVIS:  If in fact this had come up as no

3    results?

4          THE COURT:  Right.

5          MR. HARVIS:  There is nothing in the record to suggest

6    that that ever happened.

7          THE COURT:  There is something in the record

8    suggesting that.  That's what the officer said.  They swore on

9    oath that's what happened.

10          I'm trying to understand your argument that the

11   officer who ran the radio run, if he in fact cannot avoid the

12   fact that the radio run shows that Cabrera owned the

13   automobile, then I understand that it's your argument that that

14   means that one can conclude that he knew that this was not a

15   forged instrument because he knew that this car was validly

16   registered to this individual, but despite that he either

17   falsified the document and/or he swore in the complaint under

18   oath that he did a run and it didn't come up and that was a lie

19   because he did a run and it did come up.  I understand that

20   part of the argument.

21          So I got a guy sitting next to him.  I'm trying to

22   figure out what your theory is of the guy sitting next to him

23   and what is the evidence that the guy sitting next to him is

24   complicit in that fabrication.

25          MR. HARVIS:  I completely understand your Honor's

1      point and I think it's well taken.  What I would say to that

2      is, the problem is that the officers were somewhat confused at

3      their deposition, so we just didn't get the clearest testimony.

4      I believe that the testimony will show that the sergeant puts

5      himself in all of these aspects of the investigation.  He puts

6      himself there, reviewing these documents and sufficiently to

7      know that there's being a fabrication made.

8              THE COURT:  I know, but did he ever say that he saw

9      the document that at the time and verified himself personally

10     that the car was not registered?

11             MR. HARVIS:  I don't think it's clear enough from the

12     testimony for him to say that.  It's a question of fact on that

13     point as to the second officer.

14             THE COURT:  But what is the circumstantial evidence

15     that you intend to offer to demonstrate that he knew that and

16     he did something to aid and abet the fabrication of the other

17     officer?

18             MR. HARVIS:  He says that he's with Dennis, comes back

19     to the precinct and sees Dennis doing the database checks, then

20     he has a discussion with Dennis and it would be our argument

21     that at that point obviously the results of the database check

22     would be discussed.

23             THE COURT:  Right, and is there any reason to assume

24     that Dennis would not have said to him the same thing he said

25     to the DA?

1          MR. HARVIS:  Oh, I see.  Well, I really don't -- I

2     don't know.  He doesn't remember.

3          THE COURT:  That's what I'm asking.  You want to throw

4     him in the suit but just because he's next to him, the DA is

5     next to him, but if you say he's fabricating the document, I

6     mean, you're doing more than just saying he lied about it.

7     You're saying that he had a document and either altered it or

8     did something to make it incomplete when he, to support his

9     perjury that he ran it and it didn't exist.  So the other

10    officer, I'm just trying to figure out whether he's just going

11    to say, well, wait a minute, that's not my affidavit, I didn't

12    say that, and I didn't do the radio run, he did the radio run.

13    I said to him, well, what's it say?  He says it's not

14    registered.  And then I say, well, then, arrest him.

15         MR. HARVIS:  That wasn't his testimony at the

16    deposition.  The testimony at the deposition was more

17    collaborative where they're working together on this process

18    where I think a reasonable inference could be drawn not

19    necessarily to grant us summary judgment as to these claims,

20    but at least a triable issue of fact as to whether he saw the

21    database version that's Exhibit 24 or he saw 16.  That would be

22    my position.

23         THE COURT:  But he never said, he was never asked nor

24    did he ever testify that he saw the database itself in whatever

25    form?

H5BFCABC

1          MR. HARVIS:  I honestly just don't remember that

2    question, your Honor.  I'm not sure.

3          THE COURT:  I mean that's -- all right.  So, and then

4    I'll let you get to the argument and most of my questions are

5    probably going to be considered on each one of your claims, but

6    I'm not sure.  You guys have this sort of a back and forth,

7    sort of past each other on your fist claim of unlawful stop and

8    search and I don't even see a search.  I don't understand what

9    that claim is.

10         MR. HARVIS:  Sure.  Well, the claim is basically, that

11   claim relates to the lawfulness of the officers going to the

12   house --

13         THE COURT:  That's not a search, unlawful search.

14         MR. HARVIS:  It's a seizure.

15         THE COURT:  But he was under arrest, so how is that a

16   different claim?  They went to the house and then they either,

17   you have a false arrest claim or you don't have a false arrest

18   claim.  I don't understand what, how -- somehow I'm trying to

19   fashion that you're trying to say, well, between the time they

20   saw him at the door and he went downstairs and they put the

21   cuffs on him, you have a separate claim that's not part of the

22   false arrest claim.  It's not a search claim because they

23   didn't search him.

24         MR. HARVIS:  Right, I agree.

25         THE COURT:  And that's what you argue it's some kind

H5BFCABC

1    of a search claim.

2              MR. HARVIS:  It's a Terry claim is really what it is.

3    It depends on how we analyze it.

4              THE COURT:  It isn't, because he was either, he was

5    either under arrest or he wasn't, and it was clear that they,

6    you know, and whether they tricked him into coming out of the

7    house doesn't make it an unlawful stop claim.  They came and

8    knocked on the door and they said would you come downstairs.

9    Quite frankly, as soon as he started going downstairs with them

10   he's under arrest, they're not letting him go.  They know he's

11   not going anywhere.  They took him downstairs to arrest him.  I

12   don't know how that's a separate claim for this.

13             MR. HARVIS:  Sure.  The only way I would have thought,

14   in the situation where we all came to the conclusion that the

15   arrest was made downstairs, it just would be for him to be

16   compensated for the time from when they came to his door until

17   the time they made the arrest.  Because they claim there was

18   some investigation they were purportedly doing before they came

19   to the door even though the plaintiff said there was basically

20   nothing said.  So from the point they seized him and brought

21   him downstairs we want to be sure that the constitutionality of

22   that is considered.

23             THE COURT:  The reason why I'm confused is because

24   your paragraph 32 that supports this claim said defendant

25   violated the Fourth and Fourteenth Amendment because they

1    stopped and searched plaintiff without reasonable suspicion.

2              MR. HARVIS:  Right.

3              THE COURT:  That's not what happened.

4              MR. HARVIS:  Not at that moment.  He was searched at

5    the precinct obviously.

6              THE COURT:  But at that point he's already under false

7    arrest.  There's no search claim.  You didn't say he was

8    stopped and detained.  He wasn't even stopped.  They came and

9    they knocked on the door.

10             MR. HARVIS:  You're right.

11             THE COURT:  So I'm just trying to figure out why, I

12   mean, I see, at least I see clearly your theory with regard to

13   a false arrest and malicious prosecution.  That's basically the

14   heart of your claim.

15             MR. HARVIS:  And evidence fabrication, your Honor.

16             THE COURT:  They falsely arrested him and they knew,

17   because, and my version would be because they ran the database,

18   and the database indicates that he validly had a registered

19   car, that they clearly didn't have probable cause to arrest him

20   for a forged instrument because they had information in their

21   possession.  I don't know, was he arrested before or after this

22   database was run?

23             MR. HARVIS:  The one here, he's already been at the

24   precinct for a few minutes, but it's before any process is

25   issued to him.  But they testify, your Honor -- I'm sorry to

H5BFCABC

1  interrupt, but the officers themselves testify, as I mentioned,

2  they had actually run these database checks from their vehicle

3  before they went to his house.

4       THE COURT:  So they saw the database but they didn't

5  print it out?

6       MR. HARVIS:  Correct.

7       THE COURT:  Then when they got to the precinct this is

8  the request to print it out?

9       MR. HARVIS:  Right.  Just with this caveat we have the

10  two versions of it, but yes.

11       THE COURT:  Right it's two versions, but the times,

12  there's one run.

13       MR. HARVIS:  Correct.

14       THE COURT:  One isn't run at one time and the other is

15  run at a different time.

16       MR. HARVIS:  That's exactly right, your Honor.

17       THE COURT:  At the precinct at 6:19:43 they ran a

18  database.  Now, whether this is the result, which one is the

19  result is the question.

20       MR. HARVIS:  Exactly.

21       THE COURT:  Well, let's make sure that's correct.

22       MR. HARVIS:  I'll tell you again if you want to know

23  the Bates numbers to compare them.

24       THE COURT:  Yeah.  I thought they have different

25  times.

H5BFCABC

1          MR. HARVIS:  No, they don't actually, your Honor.  If

2     you look again DEF 25 on Exhibit 16 gets compared to DEF 275 to

3     276 on Exhibit 24.  And then it's exactly the same.

4          THE COURT:  No, I have on 273, I have a different

5     time.

6          MR. HARVIS:  Correct and the 273 time correlates to

7     the DEF 26.  If you look at DEF 26 the only reason we don't

8     make note of that is, as I said, it makes note to an expired

9     plate, but if you look at 273 to 274 that's the same as DEF 26.

10          THE COURT:  I see.  So the relevant document is not

11     273.

12          MR. HARVIS:  Correct.

13          THE COURT:  The relevant document to be compared is

14     275.

15          MR. HARVIS:  Correct.

16          THE COURT:  Comparing that to --

17          MR. HARVIS:  DEF 25.

18          THE COURT:  25.  And you say that there's, no one has

19     an explanation as to why this information with regard to

20     Cabrera --

21          MR. HARVIS:  Block 4, your Honor, yes.

22          THE COURT:  Block 4, is not a part of the document

23     that was in the possession of the district attorney's office.

24          MR. HARVIS:  That's correct and the document that was

25     argued before this Court in the initial motion practice.

H5BFCABC

1          THE COURT:  Did you have both of these documents when

2    you did the deposition?

3          MR. HARVIS:  Yes.

4          THE COURT:  And was the testimony there or evidence

5    from some other place that 25 was what was given to the

6    district attorney's office by Officer Dennis?

7          MR. HARVIS:  Yes, your Honor.  We have an affidavit

8    from the DA's office that references the specific documents and

9    shows that the ones that correlate to DEF 25 are the ones that

10   were sent them and no others.

11         THE COURT:  And they did not receive 75?

12         MR. HARVIS:  That's correct.

13         THE COURT:  Okay.  So you can establish that 25 was

14   what was provided by the officer to the district attorney's

15   office?

16         MR. HARVIS:  That's correct.

17         THE COURT:  It's not as if the district attorney's

18   office did their own independent run.  They saw this

19   information from the arresting officer and the arresting

20   officer provided whatever information they had they contend

21   that was provided by the arresting officer.

22         MR. HARVIS:  Yes, your Honor.

23         THE COURT: All right.  Then I got it.

24         So, all right.  So I understand, as I say, I have some

25   issues with Count One as being a separate count from Count Two.

H5BFCABC

1    I understand, I assume that your position with regard to Count

2    Two, and I don't know if you have a different theory, but I

3    assume that your theory is that -- well, let me ask one more

4    question.  Did they claim that they did the run before they

5    went up to the apartment or after they arrested the plaintiff?

6            MR. HARVIS:  They claim before, your Honor, in their

7    deposition.  We just haven't provided any documentation.

8            THE COURT:  Okay.  So the scenario that you say the

9    facts support is that the officers made their observations of

10   the different temporary plates on the car.  To verify whether

11   or not this gentleman just had an unregistered car they ran the

12   plate?  They ran what.

13           MR. HARVIS:  They ran the VIN, your Honor, and I think

14   also the plates.  They weren't sure if they just ran the VIN or

15   the plates, but both would have shown this registration was

16   valid.

17           THE COURT:  The plates would have been the temporary

18   Virginia plates.

19           MR. HARVIS:  It's interesting, the car had just days

20   earlier had just days earlier actually been registered in New

21   York, so if they ran the VIN it would have shown the

22   registration was active in New York and was also active on the

23   Virginia plates.  They were all tied in to the car.

24           THE COURT:  Is that on the document?

25           MR. HARVIS:  Yes.

1              THE COURT:  Where is the Virgina plate?

2              MR. HARVIS:  If you look at Exhibit 24, the first

3    document 273 to 274 is one of the Virginia plates.  You see at

4    the top license and it says 39956K?  That's one of the plates.

5              THE COURT:  That says New York.

6              MR. HARVIS:  Well, no, I think that that just shows

7    that it's first being checked in the New York system and then

8    when you go down to block four it's showing it responsive for

9    the Virginia out-of-state system.

10             THE COURT:  Block 4?

11             MR. HARVIS:  Exactly.

12             THE COURT:  So this indicates that they ran, the

13   39956K is the Virginia current plate or expired plate?

14             MR. HARVIS:  Current plate, your Honor.

15             THE COURT:  So they ran that plate?

16             MR. HARVIS:  Yes.

17             THE COURT:  The 1002 is the VIN number?

18             MR. HARVIS:  The VIN number is on page 274.  It's the

19   top line of that page.  It begins with WBA.

20             THE COURT:  Okay.  All right.  So they ran --

21             MR. HARVIS:  I'm sorry, your Honor.  I misspoke.  This

22   273, 274 is the expired plate, not the active one.  You see it

23   there on block 4, it says plate status expired on page 274,

24   third line down.

25             THE COURT:  So that's the expired plate that

H5BFCABC

1  corresponds to the VIN number and that was the one that was in

2  the car window with the other plate?

3           MR. HARVIS:  No.  I believe that is the one on the

4  front and back in the car.

5           THE COURT:  And then the valid plate.

6           MR. HARVIS:  In the car window is the pages 2 and 3,

7  so it's pages 275 and 276 relate to the active plate and you

8  can see it again.  It follows the same.

9           THE COURT:  So the active plate would be LI4?

10          MR. HARVIS:  That's correct, your Honor.

11          THE COURT:  So that's the active plate.

12          MR. HARVIS:  Actually, if you continue, your Honor,

13  into 277, that is then the check of the actual VIN and that

14  shows you that it's registered under New York State as an

15  active registration.

16          THE COURT:  277 is the VIN.  The WBA?

17          MR. HARVIS:  Yes.

18          THE COURT:  And where does it say it's an active

19  plate?

20          MR. HARVIS:  On page 278, it's in that block, that

21  same block at the top of 278. Let me just find, it says status

22  valid at the bottom of that block, it's the bottommost part of

23  that block.

24          THE COURT:  Where it says valid; status valid?

25          MR. HARVIS:  Correct.

1          THE COURT:  Except I don't understand the difference

2     between that block with Cabrera's name in it and block number 1

3     which says no record.  Why would block number 1 say no record?

4          MR. HARVIS:  I can only assume that that has to do

5     with some different aspect of the database that's being

6     queried.  I think they looked through different repositories of

7     information when it's keyed in.

8          THE COURT:  Because the first four blocks say no

9     record.

10          MR. HARVIS:  That's correct.

11          THE COURT:  And the fourth block shows the valid

12     number.  So all of this would have come up on the run?

13          MR. HARVIS:  Exactly.  This is as it was done,

14     according to the City.

15          THE COURT:  All right.  Except I don't understand, it

16     says here, it says it's valid and it says that the expiration

17     date, I see, is 9/13/2007.

18          MR. HARVIS:  That's correct, Judge.

19          THE COURT:  And it was run on 9/21/2015.  That was the

20     date of the arrest.

21          MR. HARVIS:  Exactly.

22          THE COURT:  All right.  So the scenario as I have it,

23     if this case were to go to trial, what you say that the

24     evidence would show is that they arrested your client for

25     having a forged temporary license plate based upon the fact

1    that they claim that the unusual circumstances of having the

2    expired plate and the new plate and the date of the new plate

3    being the date of the sale, so --

4             MR. HARVIS:  When they go to the DA they say, because

5    the plates aren't on file, that's what they're hanging their

6    hat on, but at the deposition they say because the plate is

7    laminated and they're trying to say the dates are somehow

8    improper because the sale date of the second license plate is

9    the same as the expiration date of the first one.  But if you

10   think about it if the plate is expiring, the original plate, it

11   might make sense the new plate issue date is the same as the

12   date of expiration.

13            THE COURT:  But what's more important is that they ran

14   the VIN.

15            MR. HARVIS:  That's our entire argument.

16            THE COURT:  And they ran the plate, and the VIN,

17   running the VIN indicated from these records that both, it was

18   validly registered in New York and that the temporary plate was

19   a valid temporary plate.

20            MR. HARVIS:  The only thing -- that's largely correct.

21   I just want to point out there needs to be two different

22   databases checked in order to get to that conclusion which both

23   of them were checked here.  One is the out-of-state license

24   plate which shows valid for the out-of-state plate and VIN for

25   New York, which shows valid for a New York registered vehicle.

H5BFCABC

1          THE COURT:  So your position is they knew when they

2     did this run, and you say they indicated they did this run

3     before they even went up to his apartment.

4          MR. HARVIS:  At their deposition, yes.

5          THE COURT:  They knew when they went up to the

6     apartment they had in hand, well, not in hand, but they had

7     already checked the registration and that would have indicated

8     that the current temporary out-of-state registration was valid.

9          MR. HARVIS:  Yes.

10         THE COURT:  And they, even though he had not yet

11    received the plates themselves, he already, his car was

12    technically already registered in New York.

13         MR. HARVIS:  That's correct.

14         THE COURT:  So they would have known it.  And in fact

15    my recollection is they basically said, testified, and their

16    testimony would be if they had known that, they would not have

17    arrested him.

18         MR. HARVIS:  That's what Officer Dennis said in his

19    deposition, yes.

20         THE COURT:  So if they knew this and they arrested him

21    anyway, reasonable argument that's a false arrest.

22         MR. HARVIS:  I think so, your Honor.

23         THE COURT:  If they knew this, and still filed a

24    false, swore to a false complaint indicating that, Dennis

25    indicating, quote, I ran a computer check of the license plate

H5BFCABC

1    numbers which revealed that the numbers were not on file

2    anywhere," that that was a false sworn statement.

3            MR. HARVIS:  That's correct, your Honor.

4            THE COURT:  And so, therefore, not only was that in

5    support of the false arrest, it initiated a prosecution, where

6    he knew that those facts weren't true.

7            MR. HARVIS:  Exactly.

8            THE COURT:  And by providing this run which deleted

9    the specific information about Mr. Cabrera's information, he

10   fabricated the evidence?

11           MR. HARVIS:  Yes.  We believe fabrication is shown

12   both through his statements under the Garnett case, as well as

13   the actual documents, but the documents alone would suffice.

14           THE COURT:  I'm not sure how his statements qualify as

15   a fabrication of evidence.

16           MR. HARVIS:  Well, that's a matter of some dispute in

17   most Courts, but in the Garnett case Judge Woods stated it

18   would qualify as fabricated evidence, and it was upheld by the

19   Second Circuit.  That case is Garnett.

20           THE COURT:  What do you say is fabricated evidence?

21           MR. HARVIS:  The statement the plates were not on file

22   anywhere because it's material to the charge Dennis was trying

23   to make out and it might be admissible against him in court as

24   well.

25           THE COURT:  What might be admissible?

H5BFCABC

1          MR. HARVIS:  Dennis's allegation he did the search and

2     the plates were not on file.

3          THE COURT:  Well, the testimony.

4          MR. HARVIS:  Exactly.

5          THE COURT:  I'm not sure --

6          MR. HARVIS:  We don't really know --

7          THE COURT:  That's not critical.  I'd have to think

8     that out as to whether or not I would agree with Judge Woods

9     that that testimony in and of itself is fabrication of

10    evidence.

11         MR. HARVIS:  Sure, but certainly the alteration of

12    these documents would qualify.

13         THE COURT:  Clearly.  I'm not sure that I have much,

14    if that is the scenario that can be proven, I'm not sure that I

15    have much of a dispute as to whether or not a jury could rely

16    on that for malice, a finding of malice.  Obviously, if a

17    police officer knowingly and willfully arrests a person that he

18    knows is innocent, for whatever advantage he personally gains

19    from that, I think you could argue that it matters,

20    particularly in light of the fact that he has to go through the

21    lengths of deliberately perjuring himself in fabricating a

22    document, that he knows that the document is, has to be altered

23    and basically what he is doing is what he is accusing the

24    plaintiff of doing.

25         MR. HARVIS:  It's almost worse, your Honor.

1       THE COURT:  He's forging a document minimally and with

2  regard to other violations of the law.  I understand that.  I'm

3  not, again, I just said, I have some issue with whether or not

4  there's a separate unlawful stop and search, as you've alleged

5  it, and I have some concern about your negligent hiring,

6  training, retention, because I don't know what, I can't clearly

7  articulate the facts and I'm not sure what facts you say that

8  would support the, they should have known better not to hire

9  him, they should have trained him to do something different.

10  It doesn't take a whole lot of training to tell an officer

11  you're not supposed to fabricate a document and you're not

12  supposed to give false testimony.  I just don't --

13      MR. HARVIS:  I realize also, I want to bring before

14  the Court, I realize there was a drafting error here.  We did

15  not actually plead a state law malicious prosecution claim by

16  name here.  I want to note to the extent we can make the

17  argument that the pleadings here can conform to the proof we

18  have the timely claim and that is valid under state law so to

19  the extent I want to put on the record I made a mistake there.

20      THE COURT:  Which form?

21      MR. HARVIS:  The claim for malicious prosecution it's

22  listed as a federal claim and there's an analogue claim that we

23  have a right to assert --

24      THE COURT:  Well, quite frankly, I think the -- I'm

25  not even sure that the jury needs any separate instruction,

H5BFCABC

1  substantive instruction with regard to the state and federal

2  false arrest claim and the state and federal malicious

3  prosecution.

4         MR. HARVIS:  The only reason I'm mentioning, the only

5  material difference is under federal law you have to show a

6  post-arraignment deprivation of liberty and in the state law

7  it's not required and that's an argument the City is making,

8  but I just want to put it on the record.  So I agree with your

9  Honor.

10        THE COURT:  I'm not aware, I'm not particularly

11 compelled by the infliction of emotional distress.  I'm not

12 sure that, that a false arrest itself is simply an outrageous

13 conduct that shocks the conscience, causes -- that he should

14 have known or intended to cause some serious emotional distress

15 by your client.

16        MR. HARVIS:  I agree with your Honor and I think in

17 the run-of-the-mill case that would be true.  I just point to

18 some of the egregious facts in the record here, including the

19 fact Mr. Cabrera was in his own home, never been arrested

20 before, was with his whole family and if the record supports

21 that the officers went there knowing he had done nothing wrong

22 and in front of his family being told he has an active warrant,

23 he's never been arrested, take him downstairs in his

24 neighborhood, arrest him and have all these false charges, I

25 think it raises a question of fact especially considering the

H5BFCABC

1    ongoing nature of it.  After they had arrested him, they had

2    the DAT, they go forward, bring these charges, he could have

3    gone to jail.  Somebody like him could be seriously affected by

4    it, it could raise a triable issue, but I defer to your Honor

5    on that issue.

6         THE COURT:  Again, I don't, with regard to the last

7    claim, the failure to intervene, I'm not sure that the -- I

8    mean, the you're either alleging that he should have intervened

9    and not let Officer Dennis make the arrest or intervene and not

10   let Officer Dennis swear to the complaint.

11        MR. HARVIS:  If I could just respond to that, your

12   Honor.  Think the issue here is a conceptual one.  I don't

13   believe that this is appropriately a claim per se.  I think

14   instead it is an affirmative duty that the officer has in all

15   circumstances.  So it's not so much we're trying to suggest

16   there was some separation in terms of the direct involvement.

17   It's that what we're really trying to remind the Court is all

18   officers have this duty and if the jury were to conclude that

19   one of them was a direct participant and the other knew of it

20   but didn't do anything that could give rise to liability.

21        THE COURT:  I just don't understand how they could

22   conclude that.  I don't see how on these statistics they could

23   conclude anything other than the other officer is principally

24   responsible for this arrest and prosecution if the other

25   officer knew when they made the arrest that he shouldn't have

1   been arrested and knew when they held him and submitted

2   evidence to the DA that he was going, that he was being

3   prosecuted unfairly.  I mean, look, even, you say the other

4   officer was Dennis's supervisor?

5           MR. HARVIS:  Yes.

6           THE COURT:  Well, he had to have known that

7   particularly with regard to the malicious prosecution, he had

8   to have known, if he knew about the radio run, he would have to

9   know that he would have to, he was likely himself going to be a

10  witness in this prosecution, that he was not just a standby or

11  some sort of observer --

12          MR. HARVIS:  Sure.

13          THE COURT:  -- cop, with regards to finding out about

14  something and not doing anything about it.  He was there as one

15  of the arresting officers and he knew that he was going to

16  likely be a witness and have to testify falsely against the

17  plaintiff if this case went to trial.

18          MR. HARVIS:  I agree with that, your Honor.

19          THE COURT:  Well, okay.  So I guess we probably

20  covered most of it.  Is there anything else that you wanted to

21  argue?  I know the law on most of these issues.

22          MR. HARVIS:  No, I can rest on our briefs, your Honor.

23          THE COURT:  All right.  Then let me hear from the City

24  with regard to these claims.

25          MR. JOHNSON:  Good morning, your Honor.

H5BFCABC

1          THE COURT:  Good morning.

2          MR. JOHNSON:  The undisputed facts here is that on

3     September 21, 2015, plaintiff's vehicle was parked at the

4     intersection of 168th Street and Convent Avenue.

5          THE COURT:  Slow down.

6          MR. JOHNSON:  The vehicle had license number 39956K

7     which is at DEF 71, had a expiration date of September 14,

8     2015.

9          THE COURT:  Right.

10          MR. JOHNSON:  Plaintiff subsequently produced the

11     temporary certificate of registration which shows the date of

12     sale --

13          THE COURT:  Say that again?  He subsequently produced?

14          MR. JOHNSON:  The temporary certificate of

15     registration which proves he purchased the vehicle on

16     September 15.

17          THE COURT:  But I thought there was something also on

18     the car that indicates.

19          MR. JOHNSON:  Yes, I'll get to that.  In his

20     deposition he purchased the vehicle on September 15, 2015,

21     that's the date of sale.

22          THE COURT:  All right.

23          MR. JOHNSON:  Officer Dennis seized the expired

24     plates, which is a violation of New York City traffic law where

25     you can't have plates that are expired on your vehicle.

H5BFCABC

1      THE COURT:  He saw more than the expired plates.

2      MR. JOHNSON:  I'm getting --

3      THE COURT:  I'm not sure I understand that theory.

4  You can have ten expired plates on your car as long as you have

5  a valid plate on your car.

6      MR. JOHNSON:  They have to match information therein.

7      THE COURT:  No, the valid plate has to match.

8      MR. JOHNSON:  The plate that --

9      THE COURT:  I can stick on my car somebody else's

10  temporary plate as long as I don't represent that to be the

11  thing that authorizes me to drive that car.  I mean, if they

12  looked in the back seat and saw it sitting on the back seat,

13  that's not a violation as long as they see a valid plate.

14      MR. JOHNSON:  The valid plate should be affixed in the

15  license plate holder.

16      THE COURT:  It was here.

17      MR. JOHNSON:  The expired plates were affixed to the

18  license plate holder.  The valid one was on the dash.  The

19  expired plates were on the license plate holder.

20      THE COURT:  You don't claim there's anything illegal

21  about that?

22      MR. JOHNSON:  No.

23      THE COURT:  They claim that's not what they would have

24  arrested him for.

25      MR. JOHNSON:  That just drew their attention because

H5BFCABC

1    they see expired plates.  He looks up and sees a third plate

2    with a different number, another temporary plate, and in his

3    training and experience you don't get temporary license plates

4    with different numbers on them.

5            THE COURT:  I thought there were only two plates.  You

6    say there was a third?

7            MR. JOHNSON:  There's three plates.  There's a third.

8    Two plates with the same number on the front and back on the

9    vehicle.

10           THE COURT:  One is expired and one is valid.

11           MR. JOHNSON:  Both expired on the front and back of

12    the vehicle.

13           THE COURT:  Okay, so the two that match were the

14    expired?

15           MR. JOHNSON:  Correct.

16           THE COURT:  And they had different dates?

17           MR. JOHNSON:  They had an expiration date of

18    September 14, 2015.

19           THE COURT:  They had both the same date?

20           MR. JOHNSON:  Both the same date.

21           THE COURT:  How is that different?

22           MR. JOHNSON:  Well, there's a third plate with

23    different numbers.

24           THE COURT:  How is that a second plate?

25           MR. JOHNSON:  It's not a second plate.  It's just one

1   set of plates.

2           THE COURT:  So you say there are two different

3   documents?

4           MR. JOHNSON:  Right.

5           THE COURT:  And those two different documents are the

6   expired plate?

7           MR. JOHNSON:  One is the expired plate and that's on

8   the license plate holder and the other one is the one that

9   purports to be a valid plate that's on --

10          THE COURT:  But you just gave me three different--

11          MR. JOHNSON:  There's three plates on the car, two

12  different numbers.

13          THE COURT:  So the first two are just the same expired

14  plate.

15          MR. JOHNSON:  Right.

16          THE COURT:  So there's the documents indicating the

17  expired plate and there's documents indicating what purports to

18  be a valid temporary plate.  The valid temporary plate has a

19  different license number.

20          MR. JOHNSON:  Yes.  And the only reason the expired

21  plates are important, because they expired on September 14,

22  2015, and then he sees a plate in the dashboard which is

23  laminated, and that plate has an expiration date of October 15,

24  2015, but it has a date of sale of September 14, 2015.  So

25  that -- those undisputed facts draw the attention of the

H5BFCABC

1   officers.  First of all, the New York City Traffic Code is very

2   specific that you cannot cover a license played in any plastic

3   or synthetic material.

4              THE COURT:  That wasn't their concern.

5              MR. JOHNSON:  That wasn't their concern, but it was

6   not known to them at the time, but it is part of their concern

7   because it did draw their attention, because plates are not

8   supposed to be laminated.

9              THE COURT:  So far so good.  So far they're doing the

10  right thing.

11             MR. JOHNSON:  So they see that and they testify that

12  they do a radio run and the plates come back with a New York

13  State license plate, that's what they get, and that New York

14  State license plate was not on the vehicle.

15             THE COURT:  That's not what they say.  They say -- I

16  thought they said that they ran it and it didn't -- there was

17  no information.

18             MR. JOHNSON:  So -- no, that's not what they testify.

19  Here they testify in our 56.1 that there should have been New

20  York State plates on the vehicle because it came back as a New

21  York State registered car.

22             THE COURT:  The VIN came back as a New York State

23  registered car.

24             MR. JOHNSON:  Right, with a New York State plate, and

25  that plate was not on the car.

H5BFCABC

1          THE COURT:  And did that plate indicate that it was

2    Mr. Cabrera's car?

3          MR. JOHNSON:  Yes.

4          THE COURT:  So at that point on what basis did they

5    have to believe that he is driving an unregistered car?

6          MR. JOHNSON:  What they don't -- it's not what they

7    think is an unregistered car.  They're thinking that he's

8    displaying an improper plate as an attempt to deceive, for

9    whatever reason.

10         THE COURT:  The only way you could deceive is to be

11   able to drive a car that's not registered.

12         MR. JOHNSON:  It's not that --

13         THE COURT:  What's the deception?

14         MR. JOHNSON:  The deception is, it's not for the

15   purposes of -- it's so that someone didn't check the VIN number

16   and just wrote a parking ticket based on that license plate,

17   they wouldn't get the right car.  Also, there are a variety of

18   reasons why there are --

19         THE COURT:  I know, but they -- that doesn't, that in

20   and of itself doesn't make a whole lot of sense as being

21   probable cause for an arrest.  It is clear that that is a

22   circumstance, regardless, if you put aside the date, it's clear

23   that if they confront a car that has a valid temporary -- it

24   would not be unusual to confront a car that has a valid

25   temporary out-of-state license plate, and when you run the VIN

H5BFCABC

1    number the car would come up with a recently issued New York

2    State plate.  Almost every car is in that situation.  You have

3    your temporary plates if you bought the car in New Jersey until

4    you receive your permanent plates in the mail from the State of

5    New York.  And, obviously, the VIN number in that plate is

6    going to come up even before you receive the plate in the mail.

7           MR. JOHNSON:  That's not the case.  When the VIN

8    number is registered, you're supposed to have the plates.

9           THE COURT:  That's not true.  When the VIN number is

10   registered, that means that they issued the plates.  The plates

11   are put in the mail.  As a matter of fact, the plates are

12   either mailed to you directly or they're mailed to the dealer.

13   If they're mailed to the dealer, if the dealer picks up the

14   phone, he calls and says, "Your plates are here," I have to

15   drive to Jersey to pick up the plates.  On my way to Jersey if

16   I get stopped, the cops would look at my temporary plate,

17   Jersey plate, they would run the VIN number, the VIN number

18   would show that my car does have registered valid plates and if

19   the cop said to me, well, how come those registered valid

20   plates aren't on your car, I would say because I'm on my way to

21   the dealer to pick them up, I just got notified they're there.

22   And my temporary plate hasn't expired yet.  So I'm not driving

23   around illegally.  What I have the responsibility to do is pick

24   up those plates and put them on my car before my temporary

25   plates expire.

H5BFCABC

1        So there's nothing illegal about -- I'm not deceiving

2   anybody, and there's no reason for the cops to assume that if

3   they see temporary license plates on the car and they run a VIN

4   number and the VIN number comes up, particularly if they come

5   up with recently issued New York plates, there's no reason for

6   the cop to conclude that I'm trying to deceive somebody by

7   driving around in a car that's not registered.

8        MR. JOHNSON:  That's -- their testimony is that these

9   plates did not come back, the Virginia plates did not come back

10  as valid.

11       THE COURT:  No, the Virginia plate did come back.

12       MR. JOHNSON:  No, that's not their testimony.

13       THE COURT:  He had a valid temporary Virginia plate.

14       MR. JOHNSON:  That's not their testimony.  Their

15  testimony is when they did the vehicle check it did not come

16  back as a valid plate.

17       THE COURT:  Okay, well, I was confused, then.  I

18  thought the evidence was, and I don't remember what was the

19  testimony, but I thought the evidence was that they were

20  concerned not because it didn't come back as a valid plate,

21  they were concerned because the valid plate was issued at a

22  time that didn't make sense, that the purchase of the car would

23  coincide with the issuance and expiration of that plate, but I

24  don't remember any testimony that they thought that that was an

25  invalid plate.

H5BFCABC

1              MR. JOHNSON:  That's their testimony, that the

2      defense -- that they ran the plates and they were not valid.

3              THE COURT:  But that's not what this document says.

4              MR. JOHNSON:  They don't say -- they didn't produce

5      that document.

6              THE COURT:  All right.  So I have -- let me just

7      accept the scenario you give me.  So far so good.  I understand

8      it, although a little different than I thought I understood it,

9      that you're saying the cops saw the car, they saw an expired

10     temporary license plate number and they saw an unexpired

11     temporary license plate, both from Virginia.

12             MR. JOHNSON:  Mm-hmm.

13             THE COURT:  They ran both the plate and the VIN

14     number.  When they ran the plate and the VIN number, the

15     current Virginia temporary plate did not come up.

16             MR. JOHNSON:  Right.

17             THE COURT:  And it did not indicate that the car was

18     even registered, had been registered in New York?

19             MR. JOHNSON:  That it was never registered in

20     Virginia, that the plates were not valid, as he said.

21             THE COURT:  What about New York?

22             MR. JOHNSON:  He said they had a New York

23     registration, but those plates weren't on the vehicle.

24             THE COURT:  Okay.  So that's what I'm trying to

25     understand.  He's saying that when they ran it, it came up as a

H5BFCABC

1   New York registered plate?

2           MR. JOHNSON:  Right, and that the Virginia plates did

3   not come up.

4           THE COURT:  Okay.  And that is not what's reflected in

5   Exhibit 24.  Right?

6           MR. JOHNSON:  Exhibit 24 is the one that says the

7   plates are not --no results.  I'm sorry, that's not Exhibit 24,

8   I'm sorry, it's the other exhibit.

9           THE COURT:  I'm trying to keep it straight.  Exhibit

10  24 indicates that there was both a, the car was registered in

11  New York and that it had a valid Virginia temporary plate.

12          MR. JOHNSON:  Well, there's no testimony to support

13  that assertion.  That's --

14          THE COURT:  I'm not talking about the testimony.  I

15  mean, is that what the document says?

16          MR. JOHNSON:  I mean, I don't know, I don't really

17  have anyone who can explain those documents, or who can testify

18  to what they say other than what the lawyers say they say.

19          THE COURT:  Well, you have the cops.

20          MR. JOHNSON:  Yes, and they -- at their deposition

21  they said that's not what the results said.

22          THE COURT:  I know, but what -- did they say that

23  that's what's reflected in Exhibit 24, or what they testified

24  to is reflected in Exhibit 24?

25          MR. JOHNSON:  What they said -- I'm sorry.  What they

1    testified to was that they had never seen these documents

2    before.

3              THE COURT:  I know.  Forget about whether they've seen

4    it before.  What does it reflect?  Does this document reflect

5    that there was a valid New York plate and a valid temporary

6    Virginia plate?

7              MR. JOHNSON:  I believe so, but I don't know, because

8    they're not sure what this document is.

9              THE COURT:  Well, what makes you believe so?

10             MR. JOHNSON:  I don't know, because I don't really

11   know, because the testimony is a little bit fuzzy --

12             THE COURT:  I know, but you said you believe so.  Let

13   me put it aside and give it back to Mr. Harvis.  Mr. Harvis, is

14   this clear to you?

15             MR. HARVIS:  Yes, your Honor, it's as clear as day and

16   testified to by the City of New York.

17             THE COURT:  Where does this document indicate there

18   was a valid current Virginia plate?

19             MR. HARVIS:  Sure, that's on page 276.  Plate status

20   active.  It's the third line down from the top of 276 on the

21   end.

22             THE COURT:  Third line down?  Status active.  And

23   where is it --

24             MR. HARVIS:  That's the plate status for the Virginia

25   plate.

H5BFCABC

1            THE COURT:  How do you know that's for the Virginia

2      plate?

3            MR. HARVIS:  Because at the beginning of that on page

4      275 is an inquiry of that license plate number.

5            THE COURT:  Which is?

6            MR. HARVIS:  L14001.

7            THE COURT:  All right.

8            MR. HARVIS:  If I may, your Honor, I'll tell you about

9      the VIN, but --

10           THE COURT:  All right.  So this document indicates

11     that there was both a -- this car was both registered in New

12     York and had temporary registrations for Virginia?

13           MR. HARVIS:  That were valid.  Yes, your Honor.

14           THE COURT:  So whatever they would have run, this is

15     the information that should have come up?

16           MR. HARVIS:  According to the NYPD and the City of New

17     York, yes.

18           THE COURT:  So let me go back to Mr. Johnson.  That's

19     what I'm trying to understand.

20           MR. JOHNSON:  Yes.

21           THE COURT:  So they did do this wrong.

22           MR. JOHNSON:  They did and the documents they got are

23     the ones that were produced.  The documents they saw were the

24     first set of documents, not Exhibit 24.

25           THE COURT:  So where does Exhibit 24 come from?

H5BFCABC

1          MR. JOHNSON:  I have no idea.

2          THE COURT:  Where did you get it from?

3          MR. JOHNSON:  I got it from the NYPD.

4          THE COURT:  All right.  And you got it by requesting

5     what?

6          MR. JOHNSON:  I requested any log-in information for

7     that day regarding Mr. Cabrera.

8          THE COURT:  Okay.  So if you hadn't seen the other

9     document, you'd be fairly confident to say this was the run

10    that was done that day and this was the information that should

11    have come up.

12         MR. JOHNSON:  Say that again, your Honor?  I'm sorry.

13         THE COURT:  I'm saying if you hadn't seen the other

14    document, Exhibit 16, you would be fairly confident to say that

15    this was the run that was done on that date and this is the

16    information that should have come up.

17         MR. JOHNSON:  I believe that's what -- yes.

18         THE COURT:  And this was produced to you as the run

19    that was done on that day and the response that was received.

20         MR. JOHNSON:  Well, yes.  I don't know exactly what

21    the difference is between those.

22         THE COURT:  Well, we do know what the difference is.

23    The difference is one shows --

24         MR. JOHNSON:  I don't know why on the day they ran the

25    run they produced 16 and then 24.

1          THE COURT:  So where did you get 16?  From the DA's

2     office?

3          MR. JOHNSON:  Yes.

4          THE COURT:  So this is the document they presented to

5     the DA's office.

6          MR. JOHNSON:  Yes.

7          THE COURT:  So let me ask you the tough question,

8     which I'm sure you don't have the answer to.  How do you

9     explain that the document that they gave to the District

10    Attorney's office is missing what is the critical information

11    that is reflected in the document that was produced to you as

12    being represented to be the run that was done on that date in

13    the information that would have been received?

14         MR. JOHNSON:  I don't have an answer other than

15    Officer Dennis says that's not the document he produced on that

16    date.

17         THE COURT:  Okay.  So is it your understanding that

18    the Police Department got this from the officers, or is it your

19    understanding that the Police Department did their own run?

20         MR. JOHNSON:  I actually don't know the answer to that

21    question.

22         THE COURT:  All right.  And did you receive from the

23    police officers any documents that they had in their possession

24    with regard to the radio run?

25         MR. JOHNSON:  Yes, and those were produced.

H5BFCABC

1          THE COURT:  And they produced what?

2          MR. JOHNSON:  Exhibit 16.

3          THE COURT:  They produced Exhibit 16.  So what came

4     from the DA's office?

5          MR. JOHNSON:  24 also has the numbers that the DA got,

6     which was 24.

7          MR. HARVIS:  No.  It's 16.

8          THE COURT:  16 isn't missing information.

9          MR. JOHNSON:  Yes, yes.

10          THE COURT:  So you would agree that if the jury were

11     to conclude that the officers had this radio run and provided

12     information that deleted this information -- and provided the

13     document that deleted this information to the DA's office and

14     then swore to the DA's office that a computer check of the

15     license plate revealed that the numbers were not on file

16     anyway, you would agree that a reasonable jury might conclude

17     that this was a false arrest and malicious prosecution?

18          MR. JOHNSON:  Well, I mean, first, I think you have to

19     address the Devenpeck issue --

20          THE COURT:  The what?

21          MR. JOHNSON:  The Devenpeck issue before we get to --

22          THE COURT:  I'm sorry, I didn't hear you.

23          MR. JOHNSON:  The Devenpeck issue, before we get to a

24     false arrest.  Because you still have the violation of the New

25     York City Traffic Code which repeatedly even in the law itself

1   says a violation of the New York City Traffic Code is --

2              THE COURT:  But they testified that not only they did

3   not arrest him for that, they would not have arrested him for

4   that.

5              MR. JOHNSON:  Only one of the officers testified to

6   that.

7              THE COURT:  The other officer said he would arrest him

8   for that?

9              MR. JOHNSON:  Yes, but also --

10             THE COURT:  Wait, he said they would arrest him for

11  what?  The lamination?  Is that the argument you would make

12  before the jury they would justify this because they were

13  laminated?

14             MR. JOHNSON:  The argument was not that he would make

15  that arrest, but based on that information and based on the

16  Supreme Court ruling in Devenpeck that if there was probable

17  cause for any charge even the ones that were not charged also

18  has --

19             THE COURT:  So you say even though the officer said

20  under oath that they had no intent to arrest him for such a

21  violation, nor would they have arrested him for such a

22  violation, that that provides probable cause for a false arrest

23  if they falsified the document to simply arrest him for

24  something he didn't do?  I would say that's a unique set of

25  circumstances, but it's not a hard argument to make.

1          MR. JOHNSON:  But that's why you can't have a false

2     arrest claim.  A false arrest claim is based on was there any

3     evidence known to the officers that if they would have given

4     him a traffic ticket, that would provide probable cause for the

5     arrest.

6          THE COURT:  Okay, but I'm not sure -- you guys debate

7     this and I'm not sure I agree with you on this point.  Would it

8     be your position that if the car was parked beside an expired

9     meter that that would be, and they arrested him for being the

10    murderer of Jimmy Hoffa, that you could justify that false

11    arrest by saying they could have arrested him because he was

12    parked by an expired meter?

13         MR. JOHNSON:  The facts in Devenpeck are somewhat

14    similar to those facts, where the man was arrested for murder

15    but there was another charge, wholly unrelated.

16         THE COURT:  Yeah, but it was a charge that they could

17    have and would have arrested him for.

18         MR. JOHNSON:  Repeatedly in the circuit, a traffic

19    violation, even a busted taillight, is probable cause.  If you

20    look at Calais v. City of New York, Judge McMahon said an

21    arrest could stem from a violation of a busted tail light.  New

22    York State Traffic Code specifically says a violation of New

23    York State Traffic Code would provide probable cause for arrest

24    on a warrant.

25         THE COURT:  I have to look at that from -- this is a

1    unique circumstance and I don't know if Judge McMahon was

2    trying to give as sweeping a pronouncement as you're trying to

3    argue from that.  But it seems to me that you're in a different

4    situation if -- if I'm supposed to analyze what a reasonable

5    officer would have done having the same information, I could

6    only conclude that a reasonable officer, having the same

7    information that you just proffered to me would not have made

8    an arrest, and would not have argued that that would have been

9    a basis for me to arrest him.  And, in fact, in this case the

10   officer himself, as you said, it would not have been a basis

11   for me to arrest this person.  I arrested this person for

12   forging a document in order to deceive someone.  You know?

13           I don't think that the Court says that, you know, in

14   hindsight you can just find some minor violation of the law

15   that no one ever thought about at the time to try to say that,

16   okay, even though it was a -- I arrested you for something I

17   knew you didn't do, that I'm immune from that because I found

18   out that, I saw that, you know, when I think back on it, I saw

19   that you were parked next to the meter and the meter had

20   expired, so I probably legally could have arrested you for

21   that.

22           I'm not sure, one, they could have arrested him for

23   that, because that's not a crime.  And, two, that's not what

24   that reasonable officer or any reasonable officer would have

25   done.  Is it your position that some reasonable officer out

H5BFCABC

1    there in the world would have arrested this plaintiff because

2    he laminated the temporary license plate?

3              MR. JOHNSON:  Well, under the Supreme Court ruling in

4    White v. Pauley, the question has to be beyond debate.

5              THE COURT:  It's pretty much beyond debate.  This

6    officer said he wouldn't do it.  I don't know of any officer

7    who has ever done it.  I don't think you're arguing that that

8    would have been a reasonable thing for them to do.

9              MR. JOHNSON:  Again, you know, if other Courts have

10   said a minor traffic violation is a probable cause for arrest,

11   I don't know how, which minor traffic violations rise to the

12   level that no one ever gets arrested for.

13             THE COURT:  The ones that should rise to the level are

14   crimes for which one can be arrested.

15             MR. JOHNSON:  And the case law is very clear that

16   those minor traffic crimes, not just --

17             THE COURT:  So what is it that you claim that the

18   plaintiff could have been arrested for?

19             MR. JOHNSON:  So he could have been arrested for,

20   first, the plates being laminated, altered --

21             THE COURT:  The plates?  In what way were the plates

22   themselves altered?

23             MR. JOHNSON:  They were laminated.

24             THE COURT:  Okay.  So the substance of the plates

25   weren't altered.  Is there any --

H5BFCABC

1            MR. JOHNSON:  There's testimony that that could

2    obscure any possible security features on the --

3            THE COURT:  What security features?

4            MR. JOHNSON:  You can't tell.

5            THE COURT:  Were there any security features?

6            MR. JOHNSON:  He doesn't know, but if he --

7            THE COURT:  Then how can he say it's probable cause if

8    he doesn't know whether --

9            MR. JOHNSON:  He testified that he expects to see

10   security features.

11           THE COURT:  So what crime is that?

12           MR. JOHNSON:  That is altering an official document.

13           THE COURT:  What is the penalty for that?  Loss of

14   liberty?  Because unless you could argue that there was

15   probable cause to arrest him for a crime for which he can lose

16   his liberty, I'm not sure how you can justify it based on

17   probable cause to make an arrest.  An arrest is the seizure of

18   a person.  You can't seize a person and arrest them for a crime

19   for which they can't do time.

20           MR. JOHNSON:  In Marshal v. City of New York -- that

21   argument is not in the Southern District.  In Marshal they

22   argue that, you know, an officer can initiate an investigative

23   stop or arrest based on a violation of the traffic law.  It

24   doesn't make any reference whether or not it has to be

25   imprisoned or not.

H5BFCABC

| | |
|---|---|
| 1 | THE COURT:  Remind me what the traffic violation was |
| 2 | in that? |
| 3 | MR. JOHNSON:  There are several of them. |
| 4 | THE COURT:  Well, that makes sense.  I mean, that's |
| 5 | not this case.  You think the Court is saying that you could |
| 6 | justify a false arrest that is fabricated by officers based on |
| 7 | finding some minor traffic violation for which the officers |
| 8 | would not have arrested him and use that as the probable cause |
| 9 | for arresting him? |
| 10 | MR. JOHNSON:  Because it was information that was |
| 11 | available to the officer at the time. |
| 12 | THE COURT:  Right.  Information available to the |
| 13 | officer at the time would not have resulted in an arrest, |
| 14 | right? |
| 15 | MR. JOHNSON:  That's because it's a lesser -- he would |
| 16 | have just towed the car. |
| 17 | THE COURT:  How would he have towed the car? |
| 18 | MR. JOHNSON:  Because the license plates didn't show |
| 19 | up as valid.  He could have towed the car as well. |
| 20 | THE COURT:  No, no, no, no, no, no, no.  They didn't |
| 21 | have grounds to arrest him for having an invalid license. |
| 22 | That's not what it was.  You're not arguing that.  That's the |
| 23 | issue for the case.  You're arguing that they could have |
| 24 | arrested him because he laminated the temporary license plate. |
| 25 | MR. JOHNSON:  Right, because it's a violation of the |

H5BFCABC

1    New York State Traffic Law.

2              THE COURT:  What's the penalty for that?

3              MR. JOHNSON:  It could be a fine, or it could be, any

4    violation of New York Traffic Law could be a fine and I believe

5    imprisonment up to 30 days.

6              THE COURT:  I'm not sure that's true.  It's not a

7    moving violation.  First of all, it's not a moving violation,

8    and, second of all, it's not an unspecified misdemeanor, is it?

9              MR. JOHNSON:  I'm sorry?

10             THE COURT:  It's not an unspecified misdemeanor.  It

11   may be some sort of illegality that warrants a fine, but on

12   what basis -- again, I don't know on what basis you say that he

13   could have done time for the lamination.

14             MR. JOHNSON:  Also the dates on the license plates as

15   well.  That's the second part of the analysis that they saw at

16   the time.

17             THE COURT:  What crime is that?

18             MR. JOHNSON:  It suggests that the plates were, even

19   if assuming arguendo that the plates are registered in Virginia

20   why is the date of sale equal to the expiration date on --

21             THE COURT:  So what crime is that?

22             MR. JOHNSON:  That suggests the plate is forged,

23   possession of forged instrument.

24             THE COURT:  No, that's the crime for which he was

25   already arrested.

H5BFCABC

1          MR. JOHNSON:  That gets you to further probable cause.

2          THE COURT:  Wait a minute.  If I understand what

3     you're saying, and I definitely can't accept that and I can

4     reject that out of hand.  You cannot say to me that having a

5     valid temporary plate but at the same time not removing the

6     expired temporary plate gives them probable cause to arrest

7     him.

8          MR. JOHNSON:  The expired temporary date has an

9     expiration date of 9/14/15.  The date of sale on the license

10    plate that was visible to the officer at the time is 9/14/2015.

11         THE COURT:  But the current plate didn't expire until

12    when?

13         MR. JOHNSON:  Why is the date of sale the same date

14    to --

15         THE COURT:  That may be a good question, but it

16    doesn't make it probable cause.

17         MR. JOHNSON:  But it's a reasonable basis to believe

18    these numbers are --

19         THE COURT:  Not if I have a valid temporary plate in

20    the window.

21         MR. JOHNSON:  How do you know it's validly obtained?

22         THE COURT:  How do you know it's not?

23         MR. JOHNSON:  Because the expiration date and the date

24    of sale match.

25         THE COURT:  So?

H5BFCABC

1          MR. JOHNSON:  That suggests, why would they match?

2     They shouldn't match.

3          THE COURT:  You say that's probable cause to arrest

4     me?

5          MR. JOHNSON:  If he didn't have the expiration date of

6     9/15, and he just had this plate, right?  Then they would have

7     no idea when the car was actually purchased.  But this plate

8     makes it clear the car was purchased -- was not purchased on

9     September 14, 2015.

10          THE COURT:  Okay.  So, isn't it possible, not just

11     possible, isn't that in fact what happened, but isn't it

12     possible that if I buy a car in Virginia and the temporary

13     plates are going to expire, that the dealer may issue me a

14     temporary plate and may or may not issue me the temporary plate

15     with the same number, a second temporary plate?

16          MR. JOHNSON:  That's not what Officer Dennis

17     testified.

18          THE COURT:  That raised his suspicion, but that's not

19     impossible.

20          MR. JOHNSON:  But it also raises suspicion.

21          THE COURT:  But that doesn't make me a criminal.

22          MR. JOHNSON:  No, it doesn't.

23          THE COURT:  Look, I mean, let's be realistic about it.

24     You cannot tell me that if the only thing at issue here was

25     that they saw the temporary plate not match the date, but in

1    fact they checked it and it turned out to be a valid temporary

2    license and it turned out that the car had been recently

3    registered permanently in New York, you can't argue to me that

4    I would have probable cause to come knock on your door and

5    arrest you, right?  You're not arguing that, I hope.

6            MR. JOHNSON:  No, but I am arguing that, A, that's not

7    what came back, and, B --

8            THE COURT:  But if that's not what came back, that's

9    not your argument that they had another ground to arrest him.

10   That's your argument that they had an invalid ground to arrest

11   you because I agree with you.  If they ran the plate and the

12   plate came back not registered in Virginia temporarily and not

13   registered in New York recently, I agree with you that they may

14   have at least a reasonable suspicion if not probable cause to

15   arrest me for not having available some evidence that my car is

16   validly on the street.

17           But that's a different question.  But the question is,

18   if it turns out that the officers did this radio run and

19   verified that in fact the temporary license plate was valid and

20   the car was registered in New York, is there any argument you

21   could make that they had a basis at that point to arrest the

22   plaintiff?

23           MR. JOHNSON:  I'm just saying yes because the other

24   violations of the --

25           THE COURT:  Again, what's the other violation?  You

1    said it was a forged instrument because it wasn't registered.

2              MR. JOHNSON:  Also, the New York State Traffic Law

3    says you can't park a car on the New York State public roadways

4    that's registered in New York without having New York State

5    plates on them.

6              THE COURT:  Wait a minute.  That's not true.

7              MR. JOHNSON:  That's the exact law.

8              THE COURT:  Are you telling me if I bought a car in

9    Virginia and I'm waiting for the New York plate, that I'm

10   illegally parked on the street until I get those plates and the

11   cops can arrest me?

12             MR. JOHNSON:  That's exactly right.  If he was parked

13   in a driveway, then there would be no issue.

14             THE COURT:  Wait a minute.  That's impossible.  That's

15   not even -- no.  The law doesn't say that.  The law doesn't say

16   that.  You're saying -- the point of the temporary plate is so

17   that I can drive the car and park the car on the street without

18   violating any law.

19             MR. JOHNSON:  That's if you have -- but once you have

20   a New York State registration, you have to have the New York

21   State plate.

22             THE COURT:  He doesn't have the New York State

23   registration, it hasn't come to him yet.

24             MR. JOHNSON:  Then he can't park on a public roadway.

25             THE COURT:  Think about what you're arguing.

H5BFCABC

1          MR. JOHNSON:  The plates were bought on September 14,

2     he could have them Fed Ex'ed.

3          THE COURT:  So if I call the DMV and I say, you know

4     what?  Mr. Johnson just told me I can't park my car on the

5     street today because I hear that you've already issued me my

6     New York license plate but I haven't received it and they say

7     well, we just mailed it yesterday.

8          MR. JOHNSON:  They would tell you to come down --

9          THE COURT:  -- I'm running the risk of some cop

10    walking up to me saying, "Where's your New York plates?"  And

11    if I say, "The plates are in the mail," they say, "You're under

12    arrest and I'm towing your car away."

13          You're saying that's possible?

14          MR. JOHNSON:  You can go to the DMV.  They could give

15    you plates at the New York Department of Motor Vehicles if you

16    need license plates.

17          THE COURT:  I'm not even sure what law you're

18    referring to.  Where does it say you can't park the car on the

19    street with temporary license plates?

20          MR. JOHNSON:  New York State Vehicle and Traffic Law,

21    402.1A states that vehicles registered in New York that are

22    parked on a public roadway -- this is the important part --

23    shall display a set number of plates issued by the Commissioner

24    with a number and other identification number corresponding to

25    a certificate of registration.

H5BFCABC

1           THE COURT:  And you say that that means that I can't

2      park, if I have temporary plates I can't park on the street

3      until I receive the New York plates.

4           MR. JOHNSON:  Right, because those New York plates

5      will be available immediately to you.

6           THE COURT:  But they're never available immediately.

7           MR. JOHNSON:  You can go to the DMV and get your

8      plates right away.

9           THE COURT:  I have to drive in and park on the street.

10     You're saying I can get arrested and my car could be towed if I

11     went to the DMV and parked to get my plates?

12          MR. JOHNSON:  I think there are two things we're

13     confusing here.

14          THE COURT:  I am confused.

15          MR. JOHNSON:  One is whether or not you can get

16     arrested for having an invalid temporary place as a policy

17     issue and, B, whether it's a constitutional issue, whether or

18     not under the established law of the Supreme Court of the

19     United States a traffic violation provides probable cause for

20     arrest.

21          THE COURT:  Well, you have two arguments that you made

22     that have two difficulties.  One is that, no, your reading of

23     that statute does not mean and it cannot mean and no Court will

24     rule, even in traffic court, that that means that you can

25     arrest me for parking my car on the street because I only have

H5BFCABC

1   my temporary license plate and I have yet to receive my

2   permanent plate.  As a matter of fact, I hate to confess it,

3   but I committed a crime probably six months ago because I

4   bought a car in, Jersey they gave me temporary plates, the

5   temporary plates were on my car for a week before I got -- the

6   DMV said they were mailing me the plates.  And I'm driving

7   around the City and I'm parking on the street and I don't have

8   New York plates, but I know my car is registered because I

9   didn't leave the dealership until I made sure they registered

10  my car.  But they gave me temporary plates and they said you

11  know what you better do, you better make sure you get your

12  plates before these temporary plates expire and if you don't

13  get the plates before the temporary plates expire we will issue

14  you another set of temporary plates because it's not your fault

15  and that's the way the world works.

16          The way you just described the world is a Bizarro

17  world.  That's not the way the world works.  Nobody gets

18  arrested for parking on the street and no cop could reasonably

19  stand before a jury or a judge and say even though I falsified

20  documents to arrest this person for a crime they didn't commit

21  my defense is they had the car parked on the street with a

22  temporary plate and so they violated the law that says that

23  you're not supposed to park on the street unless you have your

24  plates displayed and they didn't have the plates displayed so

25  that excuses my willful framing this individual for a crime

1    that he didn't commit.  That really can't be your argument.

2              MR. JOHNSON:  What the defendants argue is that the

3    plates did not come back as valid.

4              THE COURT:  Yeah, but that is not an exception to the

5    rule.  That is the rule.  If that's the case, then your guys

6    have probable cause.  I don't disagree with that.  Your guys

7    have probable cause.  What's at issue is the crime for which he

8    was arrested.  Because these officers did not testify that they

9    arrested him for any other crime, they had any other

10   information that they thought was an arrestable offense and the

11   argument that you're making, my guess is that they would say

12   one of two things, and one thing they've always said, they said

13   I would not have made an arrest for that, and the second thing

14   they probably would say if they're asked under oath, do you

15   believe that any reasonable police officer would arrest

16   somebody for that?  And they would say no.

17             So for you as lawyer talk could say to me that somehow

18   they had probable cause to arrest this guy because he didn't

19   have his New York permanent plates on his car because he hadn't

20   received them yet from the DMV, that that excuses their framing

21   this guy for a criminal offense that he didn't commit.  I don't

22   think that that's what Judge McMahon meant.  I don't think

23   that's what the Second Circuit meant, and surely if that's what

24   they meant, I don't think they meant in it this context and if

25   they were hearing what you're here saying, they would say, no,

1    that's not what I meant.

2           So, no, I can't accept.  I can accept your argument

3    that you're going to demonstrate -- it seems to me that if

4    you're going to demonstrate that these, that the critical issue

5    here is that these officers are going to say we arrested this

6    guy because we had information about one single crime that we

7    thought he was he was committing and we thought he was forging

8    a license -- and, remember, the forgery has to be with the

9    intent to defraud, deceive and injure another person.  That's

10   what he was charged with.  So you would have to say that they

11   had some information, not just that he had something that

12   wasn't correct, but he was doing it to defraud somebody or to

13   deceive somebody.

14          There's no basis here to believe if they know that he

15   has a valid temporary plate and they know that he's already

16   been issued a New York plate recently and that New York plate

17   and the temporary plate is still valid, there is no argument

18   for them to make that they had probable cause to believe that

19   because he had a temporary plate in the window he was trying to

20   deceive somebody.  There's nothing to deceive anybody about.

21   He already has valid plates issued in New York.  What would be

22   the deception?  What would be the advantage that he's gaining

23   over anybody?  The only advantage he's gaining is the advantage

24   that anybody gets lawfully, is that they can drive around in

25   their car with the temporary plates as long as they're current

1   until they get their permanent plates.  That's not, that in

2   itself is not a basis to deceive.

3          They arrested this guy because they believed that

4   these temporary plates did not give him the right to drive this

5   car on the road.  And if they knew that he had -- and I assume

6   that that's their testimony or would be their testimony, that,

7   look, if they had seen this radio run, based on this radio run

8   they would not have gone to his house to arrest him.  Under no

9   circumstances would they have gone to his house to arrest him

10  if they had this in hand.  And the plaintiff claims that they

11  did have this in hand.  So it's a factual dispute, not a legal

12  dispute as to whether or not that they falsely arrested him or

13  maliciously prosecuted him.

14         You would agree that if they knew that he had a

15  current Virginia temporary plate, and had already been -- and

16  DMV indicated he had already been issued his permanent plate,

17  that if they said that they had -- and they knew that

18  information, but they pretended like they didn't know that

19  information, to go to his house and arrest him and they

20  falsified the information and swore to the DA that he didn't

21  have such, that that wasn't the case, you would agree that that

22  would be a basis for a false arrest and a malicious

23  prosecution, wouldn't you?

24         MR. JOHNSON:  As long as, only if you say that a

25  violation of traffic law does not give you probable cause to

H5BFCABC

1    arrest.

2              THE COURT:  All right, and you say the traffic law is

3    that he laminated the temporary plate and he parked his car on

4    the street.

5              MR. JOHNSON:  Yes.

6              THE COURT:  Those are the crimes that you say he could

7    have been arrested for?

8              MR. JOHNSON:  That.  Also that is altering an official

9    document, but yes.

10             THE COURT:  How did he alter the document?

11             MR. JOHNSON:  By laminating it.  That changes the

12   texture.  You can't laminate your Social Security card, for

13   example.  You have to send the original, not a laminated

14   version of it.

15             THE COURT:  I'm not sure that's technically correct.

16   You can laminate a copy of your Social Security card.

17             MR. JOHNSON:  You can, but that won't be your

18   official.

19             THE COURT:  Right.  If somebody says, no, I want an

20   unlaminated official one, that's the one thing.  But what is it

21   that you say that the evidence shows that was material, was a

22   material alteration of his temporary plate?  What was the

23   material alteration?

24             MR. JOHNSON:  That and the date of sale, because that

25   date of sale doesn't make any sense next to the expired date.

H5BFCABC

1          THE COURT:  The date of sale is not a crime.

2          MR. JOHNSON:  No, but it suggests something is wrong

3    with the license plate.

4          THE COURT:  I'm trying to figure out what crime

5    they're saying they had probable cause to arrest him.

6          MR. JOHNSON:  That's where possession of the forged

7    instrument comes from, partially because of the dates on the

8    two license plates.

9          THE COURT:  No, it doesn't come from them.  They did

10   not have probable cause to arrest him until they verified when

11   they did the run that his car wasn't registered.  If they did

12   the run and it showed that the car was registered, you would

13   agree they didn't have probable cause to arrest him for that

14   crime.

15         MR. JOHNSON:  Yes.

16         THE COURT:  So your argument is that they would have

17   had probable cause to arrest him for parking on the street?

18         MR. JOHNSON:  Not parking on the street.  For altering

19   an official document.

20         THE COURT:  Okay, well, you gave that parking on the

21   street argument.

22         MR. JOHNSON:  No, I understand.

23         THE COURT:  I just can't buy that.  You're saying for

24   laminating the temporary plate.  And that prevented them from

25   doing what?

H5BFCABC

1              MR. JOHNSON:  Checking his veracity.

2              THE COURT:  How?

3              MR. JOHNSON:  Because they couldn't see whether or not

4     it's supposed to have any security features, because it's not

5     the original document.

6              THE COURT:  I know, but they ran it.  The ran the VIN.

7     Now, if you say to me they ran the VIN -- see, you can't ignore

8     that they ran the VIN.  They ran the VIN.  Now, if they're

9     right, when they ran the VIN that license plate didn't come up

10    as valid, but you would agree if they ran that VIN and they got

11    this document, that they didn't have probable cause.  Because

12    it didn't stop them from verifying whether or not there was a

13    valid temporary plate.  It was a valid temporary plate and they

14    also, it was registered in New York.

15             MR. JOHNSON:  So their assertion obviously is it

16    wasn't a valid registered plate.

17             THE COURT:  But that's not your alternative argument

18    to -- if a jury were to find that they ran the plate and the

19    VIN number, and they came up with a valid -- if they came up

20    with this document that indicates a valid New York State plate

21    had been issued and that -- come on in.

22             I'm supposed to have lunch with some folks and I

23    didn't know lunch was this early.  Okay.  I'll let you break my

24    rule, since I invited you.  You can start eating and we'll be

25    finished up in a second.

H5BFCABC

1          So I'm just trying to figure out what your exception

2     is that if they ran the VIN, they came up with a current

3     temporary plate, and they came up with a valid New York State

4     plate, but they arrested him anyway for not having a registered

5     car, what would be your alternative argument that they had a

6     right to arrest him?

7          MR. JOHNSON:  So what I'm arguing is under the theory

8     of qualified immunity that it's not clear that they established

9     a violation of the New York State Traffic Law is beyond

10    debate --

11         THE COURT:  That's not why they arrested him.  That's

12    a different question.

13         MR. JOHNSON:  It's just the information that was

14    available to the officers at the time.

15         THE COURT:  Right, but based on the information

16    available to the officers -- this isn't a qualified immunity

17    case.  They either had probable cause or they didn't have

18    probable cause.  If the information available to the officers

19    was the radio run that they gave the DA, I agree with you that

20    they had probable cause to arrest him.  If the -- not radio

21    run, but if the run that they did came up with, Exhibit 24,

22    then a jury could reasonably find that they didn't have

23    probable cause to arrest him, right?  Isn't that the sole issue

24    for this jury?

25         MR. JOHNSON:  Right.  I would like to also get back to

1    the fabrication of evidence claim, because we bring up Garnett

2    and Ricciuti and the one thing that we haven't discussed is the

3    likely to influence a jury, because these charges were

4    dismissed by the prosecutor.  In Garnett, the confession that

5    was at issue caused the prosecutor to increase the charges and

6    charged him with -- and you don't have that here.  You don't

7    have anything on the record --

8              THE COURT:  No, we have something more.  The

9    information that he gave the DA, they didn't make the DA

10   increase the charges.  They were the sole basis that the DA

11   went forward with writing this complaint.

12             MR. JOHNSON:  He didn't go forward.  He dismissed the

13   charges.

14             THE COURT:  No, he wrote the complaint and charged the

15   defendant.

16             MR. JOHNSON:  And then he talked Dennis into

17   dismissing the complaint.

18             THE COURT:  Dismissal afterwards is always what

19   happens in a false arrest case.  The prerequisite for a false

20   arrest case is that they were successfully dismissed.

21             MR. JOHNSON:  I was talking about the fabrication

22   claim.  They're saying that those two were related, so if

23   there's probable cause of arrest then there's no fabrication of

24   evidence claim, is that what we're saying?

25             THE COURT:  No, the question is, what initiated this

1    prosecution?  Whether or not the fabricated evidence was the

2    basis on which the district attorney's office charged the

3    plaintiff with a crime.

4              MR. JOHNSON:  I think that's a malicious prosecution

5    claim.  How is that different, then, from the fabrication of

6    evidence claim?

7              THE COURT:  It is a little different.  I see it as a

8    little different, because I'm not sure I agree with the judges

9    who say -- and I'd have to look at the cases, I'm not sure I

10   agree with the judges who say that particular testimony in and

11   of itself, that if I go to the police and I say, "Arrest him,

12   he stole my wallet."  And they arrest you and I did that just

13   because I was mad at you and I wanted to get you arrested.

14   That's a malicious prosecution.

15             If I take my wallet and I slip it in your back pocket,

16   I think that would additionally be a fabrication of evidence.

17   If I say, "Search the guy," like, you know, like in the

18   Titanic, when the guy stuck the jewel in his pocket and he

19   walked in and they say "search him" and they pull the jewel out

20   of his pocket; that's a fabrication of evidence.  So accusing

21   him of stealing it was the malicious prosecution.  Putting the

22   evidence in is his pocket so there's independent evidence to

23   prove that is the fabrication of evidence.

24             You don't agree that --

25             MR. JOHNSON:  I was wondering, do you need a

 1   deprivation of liability after the --

 2            THE COURT:  I'll look at that more carefully factually

 3   and legally.  I'm not sure I agree that the deprivation of

 4   liberty is simply I had to go back to court.  But I'm not sure

 5   that I could draw a time line with regard to, well, he was only

 6   in jail just before they charged him instead of after they

 7   charged him.

 8            MR. JOHNSON:  This provides a better clearer record

 9   because the criminal complaint was drafted well after he was

10   released.  So that's where you could come up with the

11   additional deprivation if there is one because the criminal

12   complaint wasn't drafted at the same time he was arrested.  It

13   was six months later.

14            THE COURT:  That's a critical analysis.  The question

15   may be, and you're just talking about the fabrication of

16   evidence.  The question may be when did he fabricate the

17   evidence?  If he fabricated the evidence before he was arrested

18   in order to, in furtherance of a false prosecution against him.

19   You know, I'm not sure that you could simply say, well, he

20   wasn't formally charged until after his liberty was deprived,

21   even though I fabricated evidence to make sure that you were

22   prosecuted, held in jail for a couple of days and then get

23   convicted and hopefully go to jail for some more time.

24            MR. JOHNSON:  First of all the record is clear that

25   information was forwarded to the prosecutor after he was

1    released, it was a desk appearance ticket.

2              THE COURT:  The information may have been forwarded

3    after, but the evidence was fabricated before.

4              MR. JOHNSON:  That I don't know.

5              THE COURT:  Well, I don't know either.

6              MR. JOHNSON:  I don't know what the law says on that.

7    I think the law is pretty clear that has to be the forward, so

8    you could fabricate evidence and never forward it to a

9    prosecutor, you still have fabricated evidence but that's not a

10   fabricated evidence claim.

11             THE COURT:  I have to look at the cases, because I'm

12   not sure that -- if you say to me that, let's say you charged

13   me with this offense and I decide that I'm going to create this

14   phony run, and they say, well, you're going to have to testify

15   and we need some evidence to convict this guy.  I would say

16   okay, I will testify that I did the run and as a matter of fact

17   I'll give you the run that I got that shows that no information

18   came up, and I totally falsify that document.  I give it to the

19   DA.  You go to trial, you get convicted, the judge gives you

20   probation.

21             MR. JOHNSON:  Well, yes.

22             THE COURT:  Is it your position that there's no

23   fabrication of evidence because he didn't do a subsequent jail

24   time?

25             MR. JOHNSON:  No, no, no.  Because there's no

H5BFCABC

1   deprivation after the -- he doesn't get probation, doesn't take

2   an ECD, he's not charged with bail.  So, yes, if the individual

3   was charged with bail, if he had a trial and was convicted we

4   don't have any of these elements here.  That's why I was

5   asking --

6          THE COURT:  The reality is I think is that's much ado

7   about nothing in a way if there is a false arrest and a

8   malicious prosecution, then it's irrelevant whether there's a

9   fabrication of evidence.

10         MR. JOHNSON:  That's why I'm saying just the confusion

11  over what a denial of fair trial claim is, is it -- I think the

12  way you describe it as a false arrest and malicious prosecution

13  I think you still need the subsequent deprivation, and you have

14  that in Garnett where you have the prosecutor increasing the

15  charges and you have that in Ricciuti where you have a trial.

16  Here you have a guy who had a desk appearance ticket and then

17  he's released and then weeks later you have the criminal

18  complaint forward and the DA doesn't prosecute the case and

19  that's that.

20         So I don't know if there's a fabrication of evidence

21  in claim in that.

22         THE COURT:  The problem with that is technically there

23  is no such thing as a fabrication of evidence claim.  It's a

24  denial of a fair trial.  I'm not even sure that I agree and I

25  think the case law may be there so I may have to follow it, but

H5BFCABC

1    I'm not sure I agree that there should be a denial of a fair

2    trial claim when there's never a trial.  And there's no

3    evidence that it affected even a potential trial.  But I think

4    there's probably case law out there sufficient enough to say

5    that it doesn't necessarily have to be an actual trial.

6         MR. JOHNSON:  There has to be some deprivation, like

7    probation, for example, which would mean ECD, bail, if they set

8    bail based on an arraignment that's a restriction of liability.

9    I'm just trying to get a sense from you --

10        THE COURT:  I think, look, I think if there's a

11   malicious prosecution, if the jury were to find a claim for

12   malicious prosecution and false arrest, obviously, there are no

13   separate damages for a fabrication of evidence, so it doesn't

14   really, it has no real substantive effect.

15        MR. JOHNSON:  I think just for our office's sake we

16   wanted to know.

17        THE COURT:  I understand.  I'll look at that, unless I

18   see there's some arguable reason why there should be some

19   separate claim.  It's the kind of case that I think I should be

20   kept simple for the jury rather than complicating it with a

21   bunch of theories when it comes down to the question really is

22   whether or not they arrested him and knew he hadn't done

23   anything wrong.  I'm talking about in juror's layman's terms

24   and whether or not having arrested him what they did was they

25   decided that they would do whatever was necessary to prosecute

1     him and to support that arrest by giving false testimony and by

2     fabricating a document and whether those acts were willful.

3            And, quite frankly, it's very hard for me to think of

4     a circumstance where an officer would deliberately perjure

5     themselves to frame an innocent person and falsify a document

6     to be consistent with that testimony to frame an innocent

7     person and that's not willful.  That is a crime.  So I'm not --

8     there's no way I can say that's not willful.  That is

9     intentional and willful, if an officer would intentionally do

10    that.  There's no way that the jury could find they altered

11    this document and not find that they willfully did so in order

12    to maliciously prosecute an innocent person that they knew

13    committed no crime.

14           So I think that the real question is -- I'm in a

15    situation that you're in.  None of us in this room at this

16    point, and I don't know how you're going to explain it to the

17    jury, but none of us in this room can explain why there are two

18    different documents.  None of us can.  And whether or not down

19    at the DMV they hadn't inputted the information, I mean, I have

20    no explanation for why what the DA was given was different than

21    what you were given, and you talk about the implications and

22    the circumstantial evidence that the officers had with regard

23    to the plaintiff's alleged offense.  Think about how strong the

24    circumstantial evidence is against the officers, given the fact

25    that they produced a document to the DA which is not by any

1    other set of circumstances the actual document that should have

2    been generated at the time they made this request.  I don't

3    know, I mean, there may be an innocent explanation for that,

4    but I don't know what it is but maybe, as I said, maybe the

5    officers are credible enough that they could convince a jury

6    they're fine, upstanding officers and they would never do such

7    a thing and even though they can't explain why it is they swear

8    under oath that they wouldn't do this and they didn't do this

9    and under no circumstances would they have done this, and that

10   the only reason they arrested this guy was because when they

11   ran the check to verify what was, what the circumstantial

12   evidence implied that he didn't have a valid, he didn't have a

13   car that was validly registered on the road and they verified

14   he didn't have a car that was validly registered on the road,

15   they arrested him.  There's nobody, not even the plaintiff can

16   argue that if those are the set of facts that they would not

17   have had a right and a responsibility to do so and probable

18   cause to do so, but this case seems to be a lot more narrow of

19   an issue than when we first discussed this case.

20        The real question is, is the jury going to believe

21   that what the officers said they saw, the information they had,

22   was truly the information they had and whether or not there's

23   some way to reconcile with that that there's a document that

24   indicates that they had more information than they gave and

25   said to the DA and gave the document to the DA, because as you

1    say we have not just the document, I have what I think is

2    sufficient as a complaint and probable cause for an arrest.  He

3    says I observed forged temporary Virginia license plates.  I

4    ran a computer check of the license plate numbers which

5    revealed that the numbers were not on file anywhere.  And

6    that's not even, having that, there were multiple temporary

7    license plates affixed to the defendant's car and that the

8    numbers on one temporary license plate did not match the other.

9    And even there I think it falls short of probable cause, adding

10   this statement, because I ran a computer check of the license

11   plate numbers which revealed that the numbers were not on file

12   anywhere, I think that's probable cause because my position is

13   without that statement to the DA the DA would have never

14   charged this crime, the DA would not have written this

15   complaint without that last statement being in there and that

16   was critical to this prosecution, that he ran that plate and it

17   came back that it wasn't registered, because even if that

18   circumstance, even if it was registered, it's not the officer's

19   fault, but if it was registered, he knew it was registered, he

20   said it wasn't and then he gave them a document to reflect

21   that, which had to be altered to reflect that, that's pretty

22   serious.  That's very serious.  That's beyond the plaintiff's

23   lawsuit.  If that's really what happened here, then these

24   officers are, they shouldn't be officers.

25           MR. JOHNSON:  Right, and they testified that's not

1   what happened.

2           THE COURT:  Right.  As I say, there may be some

3   reasonable explanation for that, but as I say, even if a jury

4   were not to believe them and not be given a reasonable

5   explanation doesn't -- I'm not here to say that the conclusion

6   is that these officers are bad officers and they're really

7   lying.  They may be good officers and not lying.  That doesn't

8   mean they could prove, that they could withstand the prima

9   facie case against them if this is the evidence put before the

10  jury.  But it seems to me that I will look at all of these

11  other claimants and I think some of them will drop.  I think

12  it's not likely the false arrest and malicious prosecution

13  claim is going to drop given those circumstances and that's a

14  credibility question for a jury.

15          Now, whether or not all these other claims are viable,

16  again, I'll look at them more carefully.  I don't think they

17  all are viable, but I will look further and let you know very

18  quickly, particularly, if you're going to go to trial, whether

19  or not this case should be settled, given what your assessment

20  and what evidence may or may not be with regard to a trial

21  before a jury.

22          Mr. Harvis, did you want to add something?

23          MR. HARVIS:  I don't want to take a lot of your

24  Honor's time.  I want to add a couple of points.  One is that

25  the fabrication of evidence claim, the reason why it's

H5BFCABC

1   important, we have this claim in this case, is the reason that

2   Judge Woods said in the Garnett case and where he said that the

3   constitutional rights of a citizen are violated when a police

4   officer creates false information likely to influence a jury's

5   decision and forwards that information to prosecutors.  The

6   entire course of a prosecution is corroded by fabricated

7   evidence.  It is for that reason, no doubt, that the Second

8   Circuit has established a clear bright line rule; no arrest, no

9   matter how lawful or objectively reasonable, gives an arresting

10  officer or his fellow officers license to deliberately

11  manufacture false evidence against an arrestee.  And I just

12  want to suggest that the facts of this case I believe emphasize

13  that point and I believe that they would --

14          THE COURT:  But so does a malicious prosecution.

15          MR. HARVIS:  Well, unlike a malicious prosecution

16  claim, a fabrication of evidence claim under Ricciuti and its

17  progeny, there is no defense of probable cause so it deprives a

18  plaintiff of an opportunity to achieve liberty if the

19  defendants are able to argue that there was probable cause to

20  defeat his claim.  They can't do this with a fabrication of

21  evidence claim, so legally that's why this is significant here.

22  I want to point out --

23          THE COURT:  On these facts, though, I think it would

24  be an inconsistent if not a repugnant verdict for the jury to

25  find that.

1          MR. HARVIS:  That's worth considering.  I want to make

2     one other point of law.  Under Poser v. Doherty, which is a

3     Second Circuit case, and other cases which have looked at this,

4     the actual probable cause in a malicious prosecution case has

5     to be for a chargeable offense so this whole argument about

6     parking tickets has nothing to do with the malicious

7     prosecution claim.  Your Honor held that repeated appearances

8     in Court are sufficient to make out a deprivation of liberty,

9     that was the Rose v. Bethel case, and specifically in the

10    context of the DAT, the circuit in the Schwartz v. Ansonia case

11    sustained the deprivation of liberty for malicious prosecution

12    in the context of a desk appearance ticket.  That's all I want

13    to say.

14          MR. JOHNSON:  Your Honor, I bring up the denial of

15    fair trial claim, because of the same thing, because of a

16    malicious prosecution claim that the DA can offer a false

17    prosecution.  They can't also provide alternate liability for

18    someone if there's no restriction of liberty after the DAT.

19    Then again, as you said, it would be repugnant to have one or

20    the other.  It would also be weird for our officer's purposes

21    to have a sense that a DAT, absent any other action by the

22    prosecutor, is a denial of fair trial claim even if there is

23    probable cause for arrest.

24          THE COURT:  What you give me as circumstance here is,

25    I just have to figure out how far that stretches.  I agree with

H5BFCABC

1   you that a stronger argument can be made if the officers issued

2   a DAT, the defendant showed up on that day and if when he was

3   showed up on that day he was told the case had been dismissed.

4   That's an easier argument to make.  It's a more difficult

5   argument to make that they issued the DAT, the district

6   attorney's office writes up a complaint, a criminal complaint,

7   the defendant comes in and is arraigned on that criminal

8   complaint, the district attorney obviously overtly or by their

9   actions indicate they intend to prosecute that person for that

10  crime and that person has several subsequent appearances back

11  in court to defend against those charges.

12          MR. JOHNSON:  That's not the facts that we have here

13  because, obviously --

14          THE COURT:  These are the facts --

15          MR. JOHNSON:  Obviously, when he conveys the facts to

16  the DA, the DA tells him he's not going to dismiss the charges.

17          THE COURT:  No, not at the first appearance.

18          MR. JOHNSON:  No he does.

19          (Discussion off the record)

20          THE COURT:  I'll look at that.

21          MR. JOHNSON:  He specifically says at his deposition,

22  he calls the DA, gives them the facts and is told the case is

23  going to proceed.

24          THE COURT:  I didn't get that.

25          MR. HARVIS:  Very quickly.  He may have testified

1    about that, but he's mistaken.  He went there, signed the

2    criminal complaint, it was filed and then he was asked by the

3    DA to come back.  There was notations in our evidence here in

4    the exhibits.

5            THE COURT:  The plaintiff was asked to come back?

6            MR. HARVIS:  No, that Dennis.  They're leaving

7    messages at the precinct.

8            THE COURT:  Now, but we're talking about what

9    deprivation did the plaintiff suffer.

10           MR. HARVIS:  The plaintiff went back to court two

11   times after arraignment on the charges.

12           THE COURT:  That's what I thought.

13           MR. JOHNSON:  But they were unrelated to this charge.

14   Again, Officer Dennis didn't show up and then at the secondary

15   appearance the case was dismissed by the prosecutor.

16           THE COURT:  Still, I'm saying --

17           MR. JOHNSON:  Yes, I'm just also saying the case

18   doesn't say a court appearance is a deprivation of liberty for

19   a fabrication claim.  For a malicious prosecution claim that's

20   different, but for a fabrication of evidence --

21           MR. HARVIS:  It's the same analysis, your Honor.

22           MR. JOHNSON:  But I'm not saying --

23           THE COURT:  Okay, well, then let me let the court

24   reporter go.  Thank you.

25           (Adjourned)