UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ERICKSON CABRERA,                              :

                 Plaintiff,                    :

      -against-                              :

CITY OF NEW YORK, POLICE OFFICER               :
BRIAN DENNIS, Shield No. 13090,
SERGEANT JOSE CARABALLO, Shield No.            :
12202, and JOHN and JANE DOE 1 through 10,     :

                 Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

16 Civ. 1098 (GBD)

GEORGE B. DANIELS, United States District Judge:

      Plaintiff Erickson Cabrera brings this action under 42 U.S.C. § 1983 against Defendants City

of New York, Police Officer Brian Dennis, Sergeant Jose Caraballo, and John and Jane Doe 1

through 10 (collectively, "Defendants"). (Am. Compl., ECF No. 17, at 1.) Plaintiff asserts multiple

claims against Defendants under the U.S. Constitution and New York common law arising out of

his September 21, 2015 arrest for criminal possession of a forged instrument. After being held for

several hours at a police precinct, Plaintiff was issued a desk appearance ticket and released. On

February 1, 2016, the New York County District Attorney's Office dismissed all charges against

him. Plaintiff claims that his arrest and subsequent prosecution were unlawful because Defendants

knew he did not commit the charged offense, and that they nonetheless fabricated evidence to try

and prove that he did. (*Id.* ¶¶ 14–25.)

      Defendants previously moved under Federal Rule of Civil Procedure 56 for summary

judgment, which this Court denied as premature prior to discovery. (*See* Order dated August 19,

2016, ECF No. 42.) Defendants now move again under Rule 56, seeking summary judgment with

respect to all claims asserted in the Amended Complaint. (ECF No. 65.) Plaintiff, too, moves

pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment on his claims for false arrest, malicious prosecution, and denial of the right to a fair trial. (ECF No. 69.)

Plaintiff's cross-motion for partial summary judgment is DENIED. Defendants' motion for summary judgment is similarly DENIED as to Plaintiff's claims for (i) denial of the right to a fair trial as to Defendant Dennis, (ii) unlawful search and seizure, (iii) false arrest and imprisonment, (iv) assault and battery, and (v) malicious prosecution. Defendants' motion for summary judgment is GRANTED, however, as to Plaintiff's claim for (i) denial of the right to a fair trial as to Defendant Caraballo, (ii) negligent hiring, training, and supervision, (iii) intentional infliction of emotional distress, (iv) negligent infliction of emotional distress, and (v) failure to intervene.

## I. BACKGROUND

The following facts and allegations are undisputed, unless otherwise indicated. On August 20, 2015, Plaintiff purchased a 2007 Black BMW from Lindsay Chevrolet, a car dealership in Virginia. (Defs.' 56.1 Stmt., ECF No. 68, ¶ 3.) At the time of sale, the dealership provided Plaintiff with temporary Virginia license plates bearing the number "39956K," which were affixed to the front and back of the vehicle. (*Id.* ¶¶ 5–6.) The temporary plates issued to Plaintiff were valid through September 14, 2015. (*See id.*) At the time of sale, Plaintiff also purchased his New York State registration and license plates, though those were not issued and delivered to Plaintiff until several weeks later. (*Id.* ¶¶ 9, 18; *see also* Decl. of Gabriel P. Harvis in Supp. of Pl.'s Mot. for Summ. J. ("Harvis Decl."), ECF No. 71, Ex. 8, at 2.)

On September 11, 2015, shortly before his temporary Virginia plates were set to expire, Plaintiff contacted Lindsay Chevrolet. On September 16, 2015, he received by email an image of a new temporary Virginia license plate bearing the number "L14001." (Defs.' 56.1 Stmt. ¶¶ 10–13.) The second temporary plate indicated a date of sale of September 14, 2015, and listed Plaintiff's

New York address. (*Id.* ¶¶ 14, 17.) Plaintiff printed out the new temporary license plate on card stock, laminated it, and placed it on the front and back windows of his new car. (*Id.* ¶¶ 15, 22; Harvis Decl., Ex. 1 ("50-h Hr'g Tr."), at 33:12–17.)

Five days later, on September 21, 2015, Plaintiff's BMW was parked near the intersection of 146th Street and Convent Avenue, where it was observed by the defendant police officers Dennis and Caraballo. (Defs.' 56.1 Stmt. ¶¶ 20, 26, 30.) According to Defendants, Officer Dennis drove past Plaintiff's car and observed two temporary Virginia license plates—bearing the same number, as well as a September 14, 2015 expiration date—in the vehicle's front and back license plate holders, which struck him as "very odd." (*Id.* ¶ 26; Decl. of Paul H. Johnson in Supp. of Defs.' Mot. for Summ. J. ("Johnson Decl."), ECF No. 66, Ex. E ("Dennis Dep. Tr."), at 56:16–57:7.) On closer inspection, Dennis observed a laminated temporary Virginia license plate displayed on the dashboard of the vehicle bearing a different license plate number from those affixed to the front and back of the car. (Defs.' 56.1 Stmt. ¶¶ 27–29; Dennis Dep. Tr. at 57:18–58:9.) Officer Dennis found it suspicious that the car appeared to have several temporary plates with two different numbers. He also thought it was "weird" that the temporary plate inside the vehicle was laminated because it is normally prohibited to laminate a license plate since it makes it "hard to see the security features built into the plate." (Dennis Dep. Tr. at 58:2–9.) Lieutenant Caraballo noticed that the expiration date on the set of temporary plates affixed to the license plate holders on the front and back of the vehicle matched the date of sale listed on the laminated temporary plate inside the vehicle, which, in his view, was "very unusual" since a vehicle's temporary license plate would not ordinarily expire on the date it was purchased. (Defs.' 56.1 Stmt. ¶ 30; Johnson Decl., Ex. D ("Caraballo Dep. Tr."), at 235:16–236:2.) Based on their observations, Dennis began to suspect that the temporary plates were forgeries. (Dennis Dep. Tr. at 80:3–81:17.)

As a result, Dennis and Caraballo went to Plaintiff's residence. (*Id.* ¶ 31.) According to Plaintiff, the police officers said that they had an active warrant for Plaintiff's arrest and asked if he minded stepping outside to see it. Plaintiff acquiesced and followed the officers.[1] (Defs.' 56.1 Stmt. ¶¶ 33–35; Johnson Decl., Ex. C, at 36:5–37:6.)   Once Plaintiff exited the building, he was handcuffed, placed under arrest, and transported to the New York City Police Department's 30th Precinct. (Defs.' 56.1 Stmt. ¶¶ 37, 40; 50-h Hr'g Tr. at 20:20–21:2.)

Plaintiff was charged with criminal possession of a forged instrument in the third degree and, after about four hours, was issued a desk appearance ticket ("DAT") and released.[2] (*Id.* ¶¶ 43–44; 50-h Hr'g Tr. at 23:13–24:7.)   On November 4, 2015, Plaintiff reported for his arraignment as directed by the DAT.   After approximately one and a half hours, however, he was told that because the arresting officer failed to come to court, his case would be adjourned. (50-h Hr'g Tr. at 35:12–21.)   Plaintiff next appeared in court on December 8, 2015.   Plaintiff's assigned Legal Aid attorney presented the judge and the prosecutor with evidence that the car had been purchased in Virginia and that the temporary plates had been given to him by the car dealership.   After two to three hours, the case was adjourned to February 1, 2016, so the prosecutor could continue his investigation. (*Id.* at 36:1–12.)

---

[1] There is no proof that Plaintiff, who has no criminal record, (Harvis Decl., Ex. 3), had an outstanding warrant for his arrest at the time Dennis and Caraballo visited his residence.   The only apparent evidence in the record on this point is a print-out from a police database that was searched at 6:14 p.m. on September 14, 2015. (*See* Harvis Decl., Ex. 23.)   Plaintiff claims, however, that the warrant identified in the search results appears to be for an individual with a different first name, middle name, date of birth, social security number, height, and race, than Plaintiff. (*See* Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem. in Supp."), ECF No. 70, at 4 n.3.)

[2] Under the New York Criminal Procedure Law, rather than holding an arrestee in custody until a judge is available to conduct an arraignment, police officers have the discretion in certain cases to release the arrestee and issue him or her a so-called desk appearance ticket directing the arrestee to return to the criminal court at some future date to be arraigned. *See Bryant v. City of New York*, 404 F.3d 128, 132 (2d Cir. 2005).

On November 12, 2015, Dennis met with and was interviewed by an assistant district attorney in the New York County District Attorney's Office. (*See* Harvis Decl., Ex. 20 ("Roddin Decl."), ¶ 3.) According to the prosecutor's contemporaneously-recorded notes from the interview, Dennis queried the relevant police databases for the temporary Virginia license plates and the vehicle identification number ("VIN") associated with Plaintiff's BMW prior to visiting Plaintiff's residence to arrest him, but could not find any corresponding records on file. (*See id.* ¶¶ 3–5; Harvis Decl., Ex. 21.)   Evidently, Dennis also provided the prosecutor with printouts from the database queries he performed on the two sets of temporary Virginia license plates and VIN associated with Plaintiff's car, which seem to confirm that he ran the searches at 6:11, 6:13, and 6:14 p.m. on September 21, 2015, and that no records were found for the numbers queried. (*See* Roddin Decl. ¶ 7; Harvis Decl., Ex. 16, at 4–7.)

On that same day, Dennis signed and presented prosecutors from the New York County District Attorney's Office with a sworn criminal complaint charging Plaintiff with criminal possession of a forged instrument in violation of Section 170.20 of the New York Penal Law. (*See* Harvis Decl., Ex. 22.)   Dennis averred in the complaint that at or about 5:45 p.m. on September 21, 2015, he observed forged temporary Virginia license plates affixed to Plaintiff's car.   He further stated in the complaint that he knew the plates were forgeries because there were multiple temporary plates displayed on the vehicle with different numbers and because when he queried the relevant police databases for the license plate numbers, there were no records on file.   (*Id.*)   Ultimately, however, on February 1, 2016, the New York County District Attorney's Office decided to dismiss all charges against Plaintiff. (Defs.' 56.1 Stmt. ¶ 45.)

Pointing to documents turned over by Defendants in discovery in response to a court order, Plaintiff asserts that Defendants knew within minutes after Plaintiff was arrested—if not before the

arrest itself—that the unexpired temporary Virginia license plate was valid, and thus not a forgery, and that his car had a valid New York registration with New York license plates that had been issued just days before. (Pl.'s 56.1 Stmt., ECF No. 72, ¶¶ 5–7; *see also* Order dated November 16, 2016, ECF No. 47.) Plaintiff claims that Defendants charged him with a crime they knew he did not commit and fabricated evidence to justify their actions. (*See* Pl.'s Mem. in Supp. at 10–11.)

In support of this claim, Plaintiff relies on copies of what appear to be results from the database queries Officer Dennis ran at 6:11, 6:13, and 6:14 p.m. on September 21, 2015. (*See* Harvis Decl., Ex. 24.) Unlike the documents Dennis provided to the prosecutor, which purport to show no records on file for either of the temporary Virginia license plates displayed on and inside Plaintiff's car or the VIN associated with Plaintiff's BMW, these newly discovered documents appear to show that the second, laminated temporary plate was valid and registered to Plaintiff, and that the VIN on Plaintiff's BMW matched the VIN listed on Plaintiff's New York motor vehicle registration and the New York license plates that had recently been issued. (*Compare* Harvis Decl., Ex. 16, at 4–7, *with* Harvis Decl., Ex. 24, at 1–6.)

Plaintiff also claims that the exculpatory results from the database queries are directly tied to Dennis because they contain his unique TAX ID number, which identifies him as the querying officer. (*See* Harvis Decl., Ex. 24, at 1–6; Harvis Decl., Ex. 17; *see also* Harvis Decl., Ex. 19, at 173:24–175:4.) Moreover, based on the time stamp indicated on the results of the database query, Plaintiff asserts that Dennis was in possession of the exculpatory evidence at or about the time of Plaintiff's arrest and certainly when he swore under oath to the allegations set forth in the criminal complaint several weeks later. Finally, Plaintiff claims the newly produced documents suggest that, to corroborate the allegations in the criminal complaint, Dennis altered or least withheld portions from the version of the results from the database query that he provided to the prosecutor. At his

deposition, Dennis testified that he had never seen the version of the database query results Plaintiff cites, and that had he seen them when he searched the relevant databases, he would not have charged Plaintiff with a crime.  (Harvis Decl., Ex. 19, at 179:23–180:7.)

Based on these facts, Plaintiff brings several causes of action against Dennis and Caraballo under Section 1983 for unlawful search and seizure, false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene.  Plaintiff also asserts claims under New York common law for false arrest and imprisonment, assault and battery, and intentional and/or negligent infliction of emotional distress.  Plaintiff asserts an additional common law claim against the City of New York for the negligent hiring, training, and supervision of the defendant officers.  (*See* Am. Compl. ¶¶ 32–76.)

Plaintiff seeks summary judgment on his claims for false arrest, malicious prosecution, and denial of the right to a fair trial, while Defendants seek to have the entire complaint dismissed.  (*See* ECF Nos. 65, 69.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when "it 'might affect the outcome of the suit under the governing law.'"  *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists.  *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of

material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III.   QUALIFIED IMMUNITY

In their Answer to the Amended Complaint, Defendants invoke the doctrine of qualified immunity as an affirmative defense to liability. (Answer at 9, ECF No. 52.) "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citation and quotation

marks omitted).  The doctrine aims to give law enforcement officials "room to act with confidence in gray areas by absolving from personal liability 'all but the plainly incompetent or those who knowingly violate the law.'"  *Figueroa v. Mazza*, 825 F.3d 89, 99–100 (2d Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  Although qualified immunity only extends to public officials against whom federal causes of action have been asserted, New York common law provides comparable immunity from state law claims unless "the officials' actions are undertaken in bad faith or without a reasonable basis."  *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (citations omitted); *see also 5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009).

## IV.   PLAINTIFF'S CLAIMS

### a.   Unlawful Search and Seizure, False Arrest, and False Imprisonment

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, . . . is substantially the same as a claim for false arrest [and imprisonment] under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Perez v. Duran*, 962 F. Supp. 2d 533, 538 (S.D.N.Y. 2013).  Both claims require a showing that, *inter alia*, the defendant intentionally confined the plaintiff without consent or justification.  *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012).  Regardless of whether the action is brought under state law or Section 1983, the existence of probable cause to arrest constitutes sufficient justification and is thus a complete defense to liability.[3]  *Weyant*, 101 F.3d at 852 (citations omitted).  If there is no arrest warrant, "the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  *Dickerson v. Napolitano*,

---

[3] Probable cause to arrest also precludes liability on a claim for unlawful search and seizure. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that when police effect a lawful arrest, they may conduct a full search of the arrestee's person without any additional justification); *see also D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 395 (S.D.N.Y. 2007) ("Because we have determined that the Officers had probable cause to arrest plaintiff, her unlawful search and seizure claim cannot stand.").

604 F.3d 732, 751 (2d Cir. 2010). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)). Whether or not probable cause exists "may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

Here, summary judgment on Plaintiff's unlawful search and seizure and false arrest and imprisonment claims is inappropriate because there exists a genuine dispute of material fact on the issue of probable cause. Defendants contend that they had probable cause to arrest Plaintiff for criminal possession of a forged instrument in the third degree. "A person is guilty of criminal possession of a forged instrument in the third degree," a Class A misdemeanor, "when, with knowledge that it is forged and with intent to defraud, deceive, or injure another, he utters or possesses a forged instrument." N.Y. Penal Law § 170.20 (McKinney 2017). A "forged instrument" is defined as "a written instrument which has been falsely made, completed or altered." N.Y. Penal Law § 170.00(7) (McKinney 2017). Although the defendant officers observed two temporary plates with different numbers, it is unclear what basis they had to believe that they were falsely made with the intent to defraud or deceive. While the plates outside the car were clearly expired, there was another inside the car that clearly was not. Moreover, a car bearing a valid temporary license plate is entirely consistent with the representation on the plate itself that it was purchased only days earlier.

More importantly, there is a genuine dispute of material fact as to what was known to the defendant officers at the time of Plaintiff's arrest and, in particular, what version of the results from the database searches Officer Dennis saw when he and Lieutenant Caraballo made the decision to

arrest Plaintiff and hold him in custody.  Plaintiff and Defendants offer competing narratives as to what the results of the database queries were and what information was thus known to the Defendants and when.  In addition, defendants proffer no explanation as to why two different versions of the same document were produced to Plaintiff during discovery.

"Assessments of credibility and choices between conflicting versions of the events, are matters for the jury, not for the court on summary judgment."  *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  A jury in this case may well choose to reject as uncredible Dennis' testimony that, despite all other evidence to the contrary, he never saw the exculpatory version of the results until they were shown to him at his deposition.  It may also reasonably conclude that based on the database results, Defendants knew or should have known at or about the time of Plaintiff's arrest that the plates were lawfully issued to Plaintiff and thus were not forgeries. Alternatively, even if a jury concludes that the results of the database were not known to Defendants when they decided to make the arrest, it is clear that any probable cause the officers may have had to arrest and hold Plaintiff in the first instance would have dissipated as soon as they had reason to know that the plates were not forgeries, which in this case, would have been at 6:15 p.m. on September 21, 2015, at the latest—hours before Plaintiff was eventually released.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[A]n officer may not disregard plainly exculpatory evidence."); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (holding that an arresting officer may not "deliberately disregard facts known to him which establish justification").

If Defendants arrested Plaintiff and continued to hold him even though they learned that the plates were lawfully issued and thus not forgeries, they did so without probable cause and in violation of his Fourth Amendment rights.  In addition, with respect to a defense of qualified immunity, or governmental immunity under New York law, a jury could conclude that the officers'

decision to hold Plaintiff under such circumstances was "objectively unreasonable." *Jenkins*, 478

F.3d at 87; *Jones*, 465 F.3d at 63.  A question of fact is therefore posed requiring trial on this issue.[4]

*See Jenkins*, 478 F.3d at 88 (noting that summary judgment would be inappropriate for New York

and federal false arrest claims where the reasonableness of the officer's probable cause

determination depends on material issues of fact); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)

(holding that "if any reasonable trier of fact could find that the defendants' actions were objectively

unreasonable, . . . the defendants are not entitled to summary judgment" on the issue of qualified

immunity).   Accordingly, both Plaintiff's and Defendants' motions for summary judgment on

Plaintiff's unlawful search and seizure and false arrest and imprisonment claims are DENIED.

### b.  Malicious Prosecution

"[T]o prevail on a Section 1983 claim against a state actor for malicious prosecution, a

plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the

elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612

F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted).  A plaintiff seeking to establish a claim

---

[4] Defendants argue in the alternative that they are entitled to summary judgment because probable cause existed to arrest Plaintiff for other, uncharged offenses. (*See* Defs.' Mem. in Supp. of Summ. J. ("Defs.' Mem. in Supp."), ECF No. 67, at 8-9 (citing *Jaegly*, 439 F.3d at 154).)  In particular, Defendants argue that because Plaintiff's car was parked on a public roadway without displaying a New York registration and/or New York license plates and because he laminated the second set of temporary Virginia license plates, probable cause existed to arrest Plaintiff for violating Sections 402(1)(a) and (b) of the New York State Vehicle and Traffic Law. (Defs.' Mem. in Supp. at 8-9.)

Defendants' argument lacks merit.  The specific traffic law Defendants claim Plaintiff violated authorizes a punishment in the form of a fine between $25 and $250.  N.Y. Veh. & Traf. Law § 402(8) (McKinney 2017).  It strains credulity to argue, as Defendants do, that the arresting officers had probable cause to arrest Plaintiff for a non-criminal traffic infraction that was not even committed in their presence, *Id.* § 155; N.Y. Crim Proc. Law § 140.10(1)(a) (McKinney 2017), much less one for which the maximum punishment is only a fine.  Moreover, while Defendants are correct that "it is not relevant whether probable cause existed with respect to each individual charge, or . . . any charge actually invoked by the arresting officer at the time of arrest[,]" *Jaegly*, 439 F.3d at 154 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004)), the *post hoc* justification offered by Defendants here is the alleged violation of a non-criminal vehicle and traffic law, for which the defendant officers said they would not have arrested Plaintiff. *See* Harvis Decl., Ex. 19, at 179:23–180:7.

for malicious prosecution under New York law must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (citations omitted).  When raising a malicious prosecution claim under Section 1983, the plaintiff must also show "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty." *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004).  Malice can be shown through evidence that the defendant "commenced the criminal proceeding due to a wrong or improper motive[,]" but it may also "be inferred from the lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted).  As with claims for false arrest, the existence of probable cause is a complete defense to a claim for malicious prosecution.  *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

As to the first element, there can be no question that Defendants Dennis and Caraballo initiated a criminal proceeding against Plaintiff by arresting him and then issuing him a DAT.  *See Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) ("We have held that, under New York law, the issuance of a DAT constitutes a criminal proceeding initiation.") (citations omitted); *Ramos v. City of New York*, No. 05-CV-3155 (GEL), 2006 WL 2871969, at *4 (S.D.N.Y. Oct. 5, 2006) (holding that effecting a warrantless arrest constitutes "initiation" for purposes of a malicious prosecution claim) , *rev'd on other grounds*, 298 F. App'x 84 (2d Cir. 2008).  In addition, Officer Dennis swore out a criminal complaint against Plaintiff to support the criminal charges.  *See King v. City of New York*, 2013 WL 2285197, at *6 (E.D.N.Y. May 23, 2013) ("[P]olice officers have been found to have initiated criminal proceedings when they . . . fill out and file the complaint and affidavits.").  As to the second element, the New York County District Attorney's Office's dismissal of all charges against Plaintiff clearly constituted a termination of the proceedings in his favor.

With respect to the third element, however, there exists a genuine issue of material fact as to whether probable cause existed to arrest and charge Plaintiff. A jury may choose to accept Dennis' sworn account that he ran Plaintiff's temporary plates through police databases and found no record of them, thus leading him to believe they were forgeries. However, based on the documents produced in discovery tending to show otherwise, a jury may choose to reject Dennis' account, in whole or in part. In either case, the question of which version of events is more believable remains one for the jury, not this Court. *Jeffreys*, 426 F.3d at 553.

The fourth and final element is also lacking. As courts have noted, where there is a triable issue of fact as to probable cause, there is also a triable issue of fact as to malice. *See, e.g.*, *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343–44 (S.D.N.Y. 1999). If a finder of fact reasonably concludes that the arresting officers knew either at the time of Plaintiff's arrest or immediately thereafter that probable cause was lacking, it may properly attribute the subsequent issuance of the DAT to "a wrong or improper motive." *Lowth*, 82 F.3d at 573.

Defendants argue that summary judgment should be granted nonetheless because Plaintiff has not shown that, as a consequence of the officers' alleged wrongdoing, he suffered a Fourth Amendment seizure. (Defs.' Mem. in Supp. at 14–15.) In particular, Defendants argue that because Plaintiff "received a desk appearance ticket and did not have to post bond," he suffered no deprivation of liberty and his malicious prosecution claim must therefore fail. (*Id.* at 15.) Defendants' argument is without merit. Here, Plaintiff was held in police custody following his arrest for approximately four hours and thereafter appeared in court on criminal charges. Thus, Plaintiff could sufficiently demonstrate a loss of liberty as a result of the defendant officers' actions. Furthermore, because there remain genuine issues of material fact regarding the propriety of the

officers' actions, applying qualified immunity to this claim at this juncture is not appropriate. *See*

*Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 479 (E.D.N.Y. 2016).

Accordingly, Plaintiff's and Defendants' motions for summary judgment on Plaintiff's

malicious prosecution claim are DENIED.

### c. Assault and Battery

Assault, under New York law, is "an intentional placing of another person in fear of

imminent harmful or offensive contact[,]" while a "battery [is] an intentional wrongful physical

contact with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir.

2006). If a police officer lacks probable cause to effect an arrest, *any* force used by the officer in

effectuating the arrest, including the application of handcuffs, constitutes assault and battery. *See*

*Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *7 (E.D.N.Y. Aug. 21,

2017) (collecting cases); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 531 (S.D.N.Y. 2013).

Since, for the reasons stated above, there is a genuine dispute of material fact on the issue of probable

cause and whether Plaintiff's arrest was thus lawful, summary judgment on Plaintiff's assault and

battery claim is inappropriate. Defendants' motion for summary judgment on this claim is therefore

DENIED.

### d. Denial of the Right to a Fair Trial

Plaintiff claims that Defendants denied him the right to a fair trial when Officer Dennis

created false evidence against him and forwarded it to prosecutors in the New York County District

Attorney's Office. (*See* Am. Compl. ¶¶ 53–55; *see also* Pl.'s Mem. in Supp. at 13–16.) A claim for

the denial of the right to a fair trial based on fabricated evidence is derived from the Sixth

Amendment and the Due Process Clauses of the Fifth, Sixth, and Fourteenth Amendments of the

U.S. Constitution. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 628 (E.D.N.Y. 2017). To

establish a claim for denial of the right to a fair trial based on fabricated evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). A plaintiff need not have gone to trial to prevail on a Section 1983 claim for denial of the right to a fair trial. *Ying Li*, 246 F. Supp. 3d at 626 (citations omitted); *Arbuckle v. City of New York*, No. 14-CV-10248 (ER), 2016 WL 5793741, at *11 (S.D.N.Y. Sept. 30, 2016); *see also Ricciuti*, 124 F.3d at 130 (reversing grant of summary judgment for defendants on plaintiff's denial of the right to a fair trial claim where plaintiffs' criminal charges were dismissed pretrial). A police officer qualifies as an "investigating official" for purposes of establishing a malicious prosecution claim. *Loftin*, 2017 WL 3614437, at *8. "Information may be 'false' if material omissions render an otherwise true statement false." *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015). Unlike claims for false arrest and malicious prosecution, "probable cause is no defense to a denial of the right to a fair trial claim." *Garnett*, 838 F.3d at 278.

Defendants argue that Plaintiff's denial of the right to a fair trial claim fails because "Plaintiff has pled no facts to suggest a chain of causation between Defendants and any alleged denial of a fair trial or that the prosecutor . . . did not exercise independent judgment to dismiss the case against [P]laintiff." (Defs.' Mem. in Supp. at 19.) Defendants also argue that dismissal of Plaintiff's denial of the right to a fair trial claim is warranted because Plaintiff "suffered no deprivation of liberty as a result of any documents being forwarded to the district attorney's office." (*Id.* at 19–20.) Once again, Defendants' arguments are without merit.

Here, several weeks after arresting Plaintiff and releasing him on a DAT, Officer Dennis met with and was interviewed by a prosecutor in the New York County District Attorney's Office. During that meeting, he provided the prosecutor with what Dennis claimed were copies of the results from the database searches he conducted on September 21, 2015. On that same day, Officer Dennis executed a criminal complaint charging Plaintiff with criminal possession of a forged instrument in the third degree. There is, however, a genuine dispute of material fact as to the completeness of the documents Officer Dennis provided to the New York County District Attorney's Office, and thus as to whether Officer Dennis fabricated evidence and forwarded it to a prosecutor. More specifically, the version of the search results produced by Defendants in response to a court order in this case is substantially different from the version of the search results that Officer Dennis provided to the assistant district attorney. The nature of the discrepancy is certainly of a quality that is likely to have influenced a jury—surely it influenced the prosecutor, who memorialized in his notes from the November 12, 2015 meeting that Officer Dennis had run a search on the vehicle's VIN and temporary license plate numbers but did not find them on file anywhere.[5]   (*See* Harvis Decl., Ex. 21.)

Finally, there is sufficient evidence from which a jury could conclude that Plaintiff's liberty had been deprived as a result of the evidence Officer Dennis provided to the prosecutor. The Second Circuit's decision in *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010), is not to the contrary. In *Burg*, the court held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Id.* at 98. Noting that the plaintiff in *Burg* was required to make only one court appearance, the Second Circuit observed that the number of court appearances a criminal

---

[5] In his criminal complaint, Dennis also swore under oath that he "ran a computer check of the license plate numbers which revealed that the numbers were not on file anywhere." (Harvis Decl., Ex. 22.)

defendant is required to make "may bear upon whether there was a seizure." *Id.* Here, by contrast, Plaintiff was forced to take off from work and go to court on three separate occasions, each for several hours at a time, over a period of four months. *Burg* is thus factually distinguishable.

 *Burg* is distinguishable for an additional reason: the plaintiff in *Burg* was issued a summons for an infraction, which the court found did not impose similar burdens as "when a person faces serious criminal charges." *Id.* at 99 (citing *Albright v. Oliver*, 510 U.S. 266, 278 (1994) (Ginsburg, J., concurring) ("A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command."). Here, by contrast, Plaintiff was charged with a Class A misdemeanor, punishable by up to one year in jail and a fine of up to $1,000, with all the attendant collateral consequences of having a criminal record. N.Y. Penal Law §§ 70.15, 80.05 (McKinney 2017). Despite having been released from police custody in September 2015, Plaintiff, who up until that point had never been arrested, was subject to the state's control for many months insofar as he was effectively forced to come to court to contest the criminal charges brought against him, until they were dismissed in February 2016. Thus, if Officer Dennis in fact fabricated evidence, a jury could infer that Plaintiff suffered a deprivation of his liberty as a result. Moreover, qualified immunity is unavailable since deliberately fabricating evidence to support a criminal prosecution is plainly unreasonable police behavior. *Jenkins*, 478 F.3d at 87; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity is meant to protect "all but . . . those who knowingly violate the law").

 Because there remains a triable issue of fact on this claim, both Plaintiff's and Defendant Dennis' motions for summary judgment on Plaintiff's denial of the right to a fair trial claim are

DENIED.  Since, however, the facts alleged by Plaintiff with respect to this claim implicate only Defendant Dennis, Defendant Caraballo's motion for summary judgment on this claim is GRANTED.

### e.  Negligent Hiring, Training, or Supervision

Plaintiff asserts a claim against Defendant City of New York for its alleged negligent hiring, training and/or supervision of the defendant officers in violation of Plaintiff's rights under New York law.  (Am. Compl. ¶¶ 58–62.)  It is well settled, however, that New York law does not permit such a claim where the defendants were acting within the scope of their employment.  *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (collecting cases); *see also Stokes v. City of New York*, No. 05-CV-0007 (JFB), 2007 WL 1300983, at *14 (E.D.N.Y. May 3, 2007) (dismissing negligent hiring claim where the defendant police officer entered the plaintiff's home and arrested her without a warrant because it was "undisputed that [the officer] was acting within the scope of his employment").  Accordingly, as a matter of law, a defendant-employer may not be held liable for negligent hiring, training, or supervision where the employer admits its employees were acting within the scope of their employment.  *Edrei v. City of New York*, No. 16-CV-1652 (RWS), 2017 WL 2367992, *12 (S.D.N.Y. May 31, 2017) (citation omitted) (dismissing negligent hiring claim where the complaint alleged that the defendant police officers were acting within the scope of their employment when they discharged crowd-control devices between fifteen and twenty times over a three-minute period in close proximity to the plaintiffs).  In addition, "an essential element of a cause of action in negligent hiring, retention, supervision, and training is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury."  *Bouche v. City of Mount Vernon*, No. 11-CV-5246 (SAS), 2012 WL 987592, at *9 (S.D.N.Y. Mar. 23, 2012) (citation omitted).

Here, Defendants argue—and Plaintiff specifically alleges—that the defendant officers were acting within the scope of their employment at all relevant times at issue in this case. (*See* Defs.' Mem. in Supp. at 23; Am. Compl. ¶¶ 64, 69.) Accordingly, Defendant City of New York may not be held liable for negligently hiring, training, or supervising the defendant officers. Moreover, Plaintiff has failed to allege any facts from which it can be inferred, much less demonstrated, that the City of New York knew or should have known of the defendant officers' propensities to act in the manner alleged, namely falsely arresting someone and then doctoring evidence to cover up the wrongfulness of their actions. Therefore, Defendant City of New York's motion for summary judgment on this claim is GRANTED.

### f. Intentional and Negligent Infliction of Emotional Distress

To maintain an action under New York law for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Clayton v. City of Poughkeepsie*, No. 06-CV-4881 (SCR), 2007 WL 2154196, at *7 (S.D.N.Y. June 21, 2007) (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)). Because IIED claims are disfavored under New York law, however, such claims are not sustainable "where the conduct complained of falls well within the ambit of other traditional tort liability." *Dava v. City of New York*, No. 15-CV-8575 (ALC), 2016 WL 4532203, at *11 (S.D.N.Y. Aug. 29, 2016) (citation omitted).

Similarly, a claim for negligent infliction of emotional distress ("NIED") requires a showing of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 400 (S.D.N.Y. 2007) (citation omitted). Under New York law, such a claim ordinarily

requires "physical injury or the threat of danger, either to the plaintiff herself, or to a close family member." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 298 (S.D.N.Y. 2015) (citation omitted).

Plaintiff's IIED and NIED claims fail as a matter of law for a number of reasons. First, Defendants' alleged conduct is insufficiently outrageous to satisfy the first element of a cause of action for IIED. *See Dava*, 2016 WL 4532203, at *1, *11 (dismissing IIED claim where the plaintiff was falsely arrested despite the complaining witness's "announcement" that plaintiff was innocent); *Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016) (granting summary judgment for defendants on plaintiff's IIED claim where plaintiff argued that, as a result of his false arrest, he was incarcerated at a "tough prison" for approximately four months and had his parole date pushed back, among other things). Second, Plaintiff has failed to allege any physical injury or threat of physical injury. *See Soliman v. City of New York*, No. 15-CV-5310 (PKC), 2017 WL 1229730, at *11 (E.D.N.Y. Mar. 31, 2017) (dismissing plaintiffs' NIED claim because, other than the fact of their arrest, plaintiffs failed to allege "negligence that endangered either Plaintiff's physical safety of caused either Plaintiff to fear for his or her own physical safety"). Finally, because the complained-of conduct here falls within the scope of claims of unreasonable search and seizure, false arrest, and malicious prosecution, a cause of action for IIED or NIED is unavailing. *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 581 (S.D.N.Y. 2015); *see also Deronette v. City of New York*, No. 05-CV-5275 (SJ), 2007 WL 951925, at *5 (E.D.N.Y. Mar. 27, 2007) ("[A] claim for negligent infliction of emotional distress should be dismissed where the conduct for the underlying claim may be redressed by way of traditional tort remedies."). Accordingly, Defendants' motion for summary judgment on Plaintiff's IIED and NIED claims is GRANTED.

### g. Failure to Intervene

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). As such, liability may attach on a failure to intervene theory where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *See Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014). Moreover, at the summary judgment stage, a failure to intervene claim cannot proceed against an officer who is alleged to have been a direct participant in the claimed constitutional violation. *See id.*; *cf. Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017) (permitting, on a Rule 12(b)(6) motion, claims to proceed against individual officers for false arrest or, in the alternative, failure to intervene, but cautioning that plaintiff "will ultimately need to refine her allegations with regard to the roles played by each of the individual Defendants").

Here, Section 1983 claims are asserted against both Officer Dennis and Lieutenant Caraballo for their direct involvement in falsely arresting and maliciously prosecuting Plaintiff. Accordingly, a failure to intervene claim against either of them arising out of that same conduct cannot separately exist. With respect to Plaintiff's denial of the right to a fair trial claim, Plaintiff has failed to show or even allege that Caraballo had a realistic opportunity to intervene and prevent Dennis from

executing a criminal complaint on his own almost two months after Plaintiff was arrested and released.  Therefore, Defendants' motion for summary judgment on Plaintiff's failure to intervene claim is GRANTED.

## V.   CONCLUSION

Plaintiff's cross-motion for partial summary judgment is DENIED.  Defendants' motion for summary judgment is similarly DENIED as to Plaintiff's claims for (i) denial of the right to a fair trial as to Defendant Dennis, (ii) unlawful search and seizure, (iii) false arrest and imprisonment, (iv) assault and battery, and (v) malicious prosecution.

Defendants' motion for summary judgment is GRANTED as to Plaintiff's claims for (i) denial of the right to a fair trial as to Defendant Caraballo, (ii) negligent hiring, training, and supervision, (iii) intentional infliction of emotional distress, (iv) negligent infliction of emotional distress, and (v) failure to intervene.  These claims are therefore DISMISSED with prejudice.

The Clerk of Court is directed to close the motions at ECF Nos. 65 and 69 accordingly.


Dated: December 4, 2017
       New York, New York


                                        SO ORDERED.

                                        _George B. Daniels_
                                        GEORGE B. DANIELS
                                        United States District Judge

23